THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES CHISM *et al.*, Defendants-Appellants.

First District (1st Division) No. 77-429

Opinion filed October 2, 1978.

James J. Doherty, Public Defender, of Chicago (Gail A. Moreland, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a bench trial, both defendants were found guilty of felony murder and sentenced to a term of imprisonment of 14 to 20 years. Defendants now appeal and contend as follows: (1) that they were improperly found guilty of felony murder because there was no

underlying felony to support the verdict; (2) that the preliminary hearing testimony of a deceased witness was improperly received into evidence at trial because defendants had no adequate opportunity to cross-examine that witness at the preliminary hearing; and (3) that defendants were not proved guilty beyond a reasonable doubt.

We affirm.

Defendants were initially charged by complaint with armed robbery and felony murder. The armed robbery complaint charged that defendants "by use of force or by threatening the imminent use of force and while armed with a dangerous weapon, * * * [a .32 caliber handgun], took a 1970 Buick from Larry Pettis." The felony murder complaint charged that while escaping from the forcible felony of armed robbery the defendants caused an automobile accident which took the life of Murray Reed without lawful justification.

Pursuant to these complaints, a preliminary hearing was held to determine probable cause. At this hearing Larry Pettis testified that at approximately 9:45 p.m. on October 11, 1974, he left a party at Crane High School in the vicinity of Jackson and Oakley to check on a "69 Deuce" (Buick Electra 225), owned by Bernard Singleton. Upon leaving the building and while approximately 15 feet from the "69 Deuce," Pettis was approached by three people, two of whom pointed guns at him. Pettis identified the two individuals with guns as the defendants, Chism and Fisher. Fisher rifled through Pettis' pockets and took $20. Pettis then heard a click from Chism's gun, but the gun did not fire. Pettis pushed Chism into Fisher and ran. Pettis did not see either of the defendants after he ran.

Pettis then hailed a squad car. After entering the squad car, Pettis saw the "69 Deuce." The officers activated their siren and emergency lights and gave chase. Defendants turned down a one-way street, made a skidding turn, and proceeded the wrong way down the one-way street. Pettis testified that at times the car reached speeds of 90 to 100 m.p.h. During the chase, the "69 Deuce" collided head-on with a Cadillac causing the death of the occupants of the Cadillac. After the crash, Pettis went up to the "69 Deuce" and observed Chism on the driver's side and Fisher in the front seat on the passenger's side.

On cross-examination, Pettis testified that the automobile was not his and that, although he had the keys to the automobile at the time of the incident, these keys were not taken from him. Pettis further indicated that he did not now who started the car, but that "it was started up." Pettis also testified that the car was running when the two defendants accosted him in front of the school building.

Pettis' cross-examination testimony further indicated that there were approximately 10 other people within 15 feet of him when defendants

accosted him; that a package of Kool cigarettes was also taken from him; that two or three shots were fired at him as he ran. Pettis further testified on cross-examination that the automobile belonged to Steve McCuen; that the keys to the car were not taken from him; that there was no one in the automobile at the time Pettis was in front of the school. Pettis also testified on cross-examination that although he had the car keys in his pocket, somebody started the car. Pettis also indicated that he observed the automobile pull away and the car was going so fast he saw only one individual in the car; and that he had seen the defendant, Charles Chism, once before.

Also testifying at the preliminary hearing was Investigator Senase who testified that he approached the scene of the crash and observed Chism pinned under the steering wheel and Fisher pinned under the dashboard. He observed a gun in Fisher's hand and forced Fisher to drop the gun. Officer Senase found two shells in the revolver, one spent and one misfired. Senase also approached the other auto, a Cadillac, and observed Murray Reed and Norma Martz badly injured. They later died from injuries sustained as a result of the wreck. Senase did not recover a $20 bill from either of the defendants.

After the testimony was heard at the preliminary hearing, the State moved to amend the complaint to charge armed robbery of the automobile to armed robbery of $20 United States currency. The trial court denied the motion, but did allow a motion to change the year and make of the car to a 1969 Buick Electra. At the close of the hearing, the trial court made a finding of probable cause on the armed robbery of the auto and the felony murder.

Indictments were later returned charging both defendants with armed robbery of an unknown amount of currency from Larry Pettis, felony murder based on that armed robbery, two counts of aggravated battery on Larry Pettis and one count of attempt murder.

Larry Pettis died prior to trial. Before hearing any testimony at trial, the trial court ruled that the transcript of Pettis' preliminary hearing testimony be suppressed with regard to the counts of aggravated battery and attempt murder. The trial court reasoned that at the preliminary hearing neither defendant was charged with aggravated battery or attempt murder and that as to those counts there was no adequate opportunity to cross-examine.

At trial, the prosecution called Officer Thomas Fitzgerald who testified that at approximately 9:55 p.m. on October 11, 1974 he and his partner were in a squad car near the southwest corner of Oakley and Madison streets in Chicago. Larry Pettis exited a Mercury station wagon and had a conversation with the officers. As a result of the conversation, Pettis entered the squad car and the officers drove him to Oakley and Jackson

where they spotted a 1970 green Electra 225 Buick. The police activated their Mars lights and siren and the Buick sped off at approximately 65 miles per hour. The Buick traveled eastbound on Jackson to Leavitt where it swung around in the intersection, proceeded westbound on Jackson, and finally collided with an on-coming Cadillac.

Officer Fitzgerald went on to testify that Chism was in the driver's seat and Fisher was in the passenger's seat. A .32 caliber H & R revolver containing one spent shell and one live shell was recovered from the driver's side of the Buick.

On cross-examination Officer Fitzgerald testified that in his written report he had stated that Larry Pettis ran up to him at the scene of the alleged crimes and reported a robbery.

At the close of the State's case, the defendants moved for a directed verdict. The court sustained the motion as to the armed robbery charge, but denied the motion as to the felony murder indictments. The trial court ruled that the crime of attempt armed robbery as evidenced in the preliminary hearing transcript would support those charges.

Defendants then called two witnesses, Levi Greenley and Bernard Singleton. Levi Greenley testified that he saw Charles Chism in the Electra 225 by himself around 2:30 p.m. on the day of the accident and again at about 9 p.m. in front of Crane High School.

Bernard Singleton testified that at approximately 7 p.m. the date of the incident, he observed Pettis driving an Electra 225. Pettis spoke to Singleton and asked him to accompany him to a party at Crane High School where Pettis was supposed to meet Chism. Singleton declined the invitation. The next morning, October 12, 1974, Pettis came to Singleton's house and told Singleton that he had lent the Buick to Chism the night before and Pettis became angry when Chism did not return the car on time. Pettis was high that night and had fallen off the stairs of the school and hurt his face. When he saw the police approach the scene of the accident he told them he had been robbed. Pettis told Singleton that someone had to pay for the damage to the car and that neither he nor McCuen had any money.

The defense also submitted a stipulation that if Investigator Senase were called to testify he would state that Pettis told him that one of the defendants went over to his car and was trying to get it started and that the defendants took money and the keys to the car from Pettis' person.

■ ■ Defendants first contend that they were improperly convicted of felony murder because there was no underlying felony to support that judgment. We disagree. Defendants were charged at trial with armed robbery in that they took by force a certain amount of money from the person and presence of Larry Pettis. Defendants argue that if the trial court found that defendants committed a substantive offense different

from that charged there then exists a fatal variance between the crime charged and the proof because the accused would be misled in making his defense or would be exposed to double jeopardy. We do not believe the above problem arises in the instant case. Indictment for a particular offense operates as an indictment for all included offenses even though the latter are not specifically set forth in the indictment. (*People v. Washington* (1971), 132 Ill. App. 2d 616, 270 N.E.2d 436; *People v. King* (1966), 34 Ill. 2d 199, 215 N.E.2d 223.) The instant attempt armed robbery was a lesser included of the offense charged in the indictment, *i.e.*, armed robbery, and the trial court properly found defendants guilty of attempt armed robbery. (See *People v. Was* (1974), 22 Ill. App. 3d 859, 318 N.E.2d 309.) The evidence showed that defendants, displaying handguns, approached Pettis and rifled through his pockets. Such evidence is sufficient to support a conviction of attempt armed robbery. (*People v. Was* (1974), 22 Ill. App. 3d 859, 318 N.E.2d 309; *People v. Cheatem* (1976), 35 Ill. App. 3d 414, 342 N.E.2d 410.) Defendants were indicted for armed robbery and since attempt armed robbery is a lesser included offense of armed robbery, we see no exposure to double jeopardy or confusion caused defendants in making their defense. Moreover, attempt armed robbery affords a sufficient basis for a felony murder conviction (*People v. Green* (1975), 26 Ill. App. 3d 662, 325 N.E.2d 316, *aff'd in part, rev'd in part* (1975), 62 Ill. 2d 146, 340 N.E.2d 9), and we conclude that the judgment of felony murder was properly entered.

Defendants next argue that Pettis' preliminary hearing testimony was improperly received into evidence at trial because they did not have an adequate opportunity to cross-examine the witness at the preliminary hearing.

It is now well settled that if there was an adequate opportunity at the preliminary hearing to cross-examine a witness who dies prior to trial, then the preliminary hearing testimony of that witness is properly admitted at trial. *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116; *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121.

■■ Defendants argue that had Pettis taken the stand at trial defense counsel could have significantly impeached him through materials requested before the preliminary hearing but not tendered until after the hearing. Defendants point to the following inconsistencies in Pettis' testimony: Pettis' testimony that two men approached him with guns and that a third man was behind and his later statement to Investigator Senase that two men approached him with guns; Pettis' testimony that the stolen auto belonged to Singleton, his later testimony that the auto belonged to McCuen, and his later statement to the police that it was his car that was taken; Pettis' testimony that the car keys were not taken from him when he told Investigator Senase that the keys were taken from him; Pettis'

testimony that three, then later, that two shots were fired at him. Defendants also argue that Pettis changed his story concerning the location of himself and his assailants and whether he saw one man in the car or none. Defendants' brief contains no record references to Pettis' testimony documenting these alleged inconsistencies. However, our review of Pettis' preliminary hearing testimony indicates that during direct examination at the hearing, he testified that his assailants were two feet away from him. On cross-examination he testified that when he exited the school, they were approximately 15 feet away from him. Pettis testified on direct examination that there were two people in the automobile during the chase and his cross-examination testimony indicated that when he returned to Crane High School with the police officers, he could see only one person in the auto as it sped away. Pettis explained that the auto pulled away very quickly. Defendants also cite the testimony of the two defense witnesses, Singleton and Greenley, which contradicted certain portions of Pettis' preliminary hearing testimony. They further cite the physical evidence recovered, one gun with one spent shell and one misfired, and compare that to Pettis' testimony that two of his assailants had guns and that three shots were fired. They also note that Pettis testified that $20 and a package of Kool cigarettes had been taken from him and note that neither of these items had been recovered. We do not believe that any of the above allegedly "fertile areas" for cross-examination in any way tend to indicate that an adequate opportunity for cross-examination did not exist at the preliminary hearing. The record indicates no significant limitation on the cross-examination of Pettis and, as a matter of fact, certain of the above inconsistencies were exposed during Pettis' cross-examination. The record indicates that the defense, on cross-examination, had an adequate opportunity to expose all areas of Pettis' testimony on direct examination. We furthermore agree with the State that many of the supposed inconsistencies go to no material issue in the case, and may have benefitted, not prejudiced, defendants due to the State's inability to have Pettis explain them at trial.

The fact that Pettis' testimony was contradicted by two defense witnesses when related to Pettis' unavailability at trial is also a two-edged sword. We believe the weight to be given their testimony is best left to the trial judge. (*People v. Lofton* (1977), 69 Ill. 2d 67, 370 N.E.2d 517.) We believe that such testimony has little bearing on the adequacy of the opportunity to cross-examine Pettis.

■ Basic to defendants' argument is the contention that they could not effectively cross-examine Pettis because they were unable to secure discovery materials prior to the preliminary hearing. As we stated in

*People v. Tennant* (1975), 32 Ill. App. 3d 1034, 1040, 337 N.E.2d 322, 327, *aff'd* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116:

> "If this contention were accepted, testimony of a witness who died after the preliminary hearing could never be used. It seems more logical and reasonable to permit the use of this testimony provided that there was no significant limitation upon the free exercise of the right to cross-examine by counsel."

In the instant case defendants had the opportunity to effectively cross-examine Pettis at the preliminary hearing. The trial court placed no significant limitation on the right to cross-examine. The inconsistencies in Pettis' testimony and contradictions with other testimony go more to the weight to be given his testimony than to the effectiveness of the cross-examination.

Defendants next contend that they were not convicted of felony murder beyond a reasonable doubt. In support of this contention, defendants argue as follows: that Pettis changed his story so many times and in such material respects that his entire testimony is rendered incredible; that his associates of long standing directly contradicted him; that the physical evidence is at odds with his sworn testimony. In essence, defendants cite the same areas in the record as those cited in support of their previous argument. After reviewing the record, we conclude that defendants were convicted of felony murder beyond a reasonable doubt. We first see no major inconsistencies in Pettis' testimony concerning his location and that of his assailants, the number of shots fired, or the number of assailants. The other areas in Pettis' testimony go to no material issue in the case. It is true that the defense witnesses contradicted portions of Pettis' preliminary hearing testimony. However, as stated previously, the trial court observed these witnesses and passed on their credibility. The fact that these witnesses contradicted Pettis' preliminary hearing testimony does not create a reasonable doubt of defendants' guilt *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

Defendants also cite the physical evidence recovered and argue that it contradicts Pettis' testimony. It is true that Pettis testified two of the assailants had guns, that $20 and a pack of cigarettes were taken, and that 2 or 3 shots were fired and that only one gun containing one spent shell and one misfired shell was recovered. However, we do not believe that the physical evidence contradicts Pettis' testimony. The gun with extra spent shells, the cigarettes and $20 could have been taken by the third assailant who fled in a different direction. They could have been discarded during the chase. Moreover, the physical evidence recovered corroborates Pettis' testimony that one of the assailants "clicked" his gun and that it did not fire. It also corroborates Pettis' testimony that a shot

was fired and that one of the assailants had a gun. We fail to find that the record denotes a reasonable doubt of defendants' guilt.

For the foregoing reasons we affirm the judgments of the trial court.

Judgments affirmed.

GOLDBERG, P. J., and BUCKLEY, J., concur.