THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
SHELLY KITE *et al.*, Defendants-Appellees.

Fifth District    No. 79-551

Opinion filed June 29, 1981.

818

William G. Schwartz, State's Attorney, of Murphysboro (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John H. Reid and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1)), the State appeals from the pretrial orders of the Circuit Court of Jackson County quashing the arrests of defendants Shelly Kite and Fidelmar "Omar" Tello and suppressing their subsequent statements. The State also appeals the trial court's order denying its motion to introduce into evidence the preliminary hearing testimony of an absent witness.

Defendants, Shelly Kite and Omar Tello, were charged with home invasion, burglary, and kidnapping. The events giving rise to these charges occurred on October 19, 1978, according to the victim, John O'Brien. O'Brien's testimony at the preliminary hearing was substantially as follows. He related that he was asleep at his home in Makanda when he was awakened around 10 p.m. by a blow to the back of his head. When he awakened he saw three people standing around his bed, one of whom was holding a machete-type knife. He testified that he recognized Omar Tello, Michael Jamison and one "Pedro" as his assailants. The three men dragged O'Brien out of bed, threw him against a dresser and questioned him about a burglary of Tello's shop in Carbondale. O'Brien advised his assailants that he had no knowledge of the burglary. He then related that his wrists were tied and he was taken to a car parked in front of his house. He testified that he recognized Shelly Kite as the driver of the car. O'Brien testified that he was taken to Murphysboro, although he was unsure of the actual address. According to O'Brien, on the drive to Murphysboro he was struck in the face and mouth and beaten with the flat side of the machete. He testified that after they arrived in Murphysboro he was taken into a house where all five of them remained until 4 o'clock in the morning. O'Brien related that the three men kicked and beat him while he was being held at the house. He also testified that they threatened to kill

him and that at about 4 or 4:30 a.m., everyone except Ms. Kite left the house and went to Tello's shop where the three men questioned him further concerning the robbery of the store. O'Brien related that after approximately one hour, Tello left and that he remained in the shop with the other two men until Tello returned about an hour later. According to O'Brien, shortly thereafter a man from the shop next door entered and persuaded Tello to return O'Brien to his own home. O'Brien further recalled that he told the three men they could look through his house and car to convince them that he did not know about the robbery. The four men then drove out to O'Brien's. O'Brien stated that upon arriving, he told his girlfriend to call the police. She left the house to go call the police; however, the three men left before the police arrived, according to O'Brien.

On October 20, 1978, O'Brien reported the incident to the Jackson County sheriff's department; and search warrants for the car, Tello's shop, and the house where O'Brien was taken were issued as a result of his complaint. The police determined from O'Brien's directions that the address of the house was 1933 Minton Street in Murphysboro. Thereafter, Ms. Kite and Tello were arrested and both made statements to the police.

Prior to trial, both Ms. Kite and Tello moved to quash their arrests and to suppress their statements to the police and the evidence seized from the car, the shop, and the house. A hearing on the motions was held on August 27, 1979.

Deputy Sheriff Kenneth Akins testified at the hearing that on October 20, 1978, he went to O'Brien's home and took a report from O'Brien concerning the occurrences of October 19 and 20. He related that he and O'Brien then went to the office of the State's Attorney in order to obtain a search warrant. While at the Jackson County State's Attorney's office, Akins testified that the Murphysboro police were contacted and told to watch the residence at 1933 Minton Street and the car at that address.

James Nesler, a deputy sheriff for Jackson County, testified that while search warrants were being obtained, he called the Murphysboro police and asked for assistance in maintaining surveillance of the house and car. He testified that subsequently the Murphysboro police radioed the Jackson County sheriff's department and informed them that the car was leaving the house at 1933 Minton. Nesler testified that he told the Murphysboro police department dispatcher to "stop and hold that vehicle for us and the person driving it." He also testified that he told the Murphysboro police department that the vehicle and driver were wanted for investigation in connection with charges of home invasion, burglary, and unlawful restraint. Nesler related that Ms. Kite was stopped by the Murphysboro police at Green's IGA around 3 p.m. and that he arrived approximately five or 10 minutes later and arrested her. Nesler stated that

when he arrived at Green's IGA, he had neither an arrest warrant for Ms. Kite nor a search warrant for the car. Gregg Gillen, a deputy sheriff for Jackson County, arrived at Green's IGA shortly after Nesler. Nesler testified that he turned Ms. Kite over to Gillen who turned her over to Detectives Coughlin and Berkowitz of the Carbondale police department. Nesler testified that Gillen returned around 4 p.m. with a search warrant for the car.

Curt Graff, a police officer for Murphysboro, testified at the hearing that he and another officer, Brown, were watching the residence at 1933 Minton Street. He testified that they saw Ms. Kite leave the house and that they then contacted the sheriff's department. He stated that he and Brown were told to stop Ms. Kite and hold her for the sheriff's department, which they did. Graff testified that at the time Ms. Kite was stopped she was not violating any laws. He stated that he did not have an arrest warrant for Ms. Kite or search warrant relating to her.

Shelly Kite testified that she left the house at 1933 Minton Street and was driving to Green's IGA when the police approached her car and motioned for her to pull over. She stated that the police officers told her she was under arrest after they asked her to pull over. She further testified that the police officers did not tell her the reason for her arrest and that when she asked, the police officers said they did not know. She stated that she was detained for about 20 minutes before being taken to the sheriff's office. Ms. Kite testified that she never saw an arrest warrant.

Gregg Gillen, chief deputy for the Jackson County sheriff's department, and Deputy Sheriff Nesler testified concerning the circumstances surrounding Tello's arrest at the hearing on the motion to quash Tello's arrest.

Nesler testified that at about 4:30 p.m. on October 20, 1978, he, Gillen, Larry Tincher and Russell Dutcher, of the Murphysboro police department, and Randy Johnson of the Jackson County sheriff's department went to Tello's residence at 1933 Minton Street with a search warrant for the house. Nesler stated that he had a reasonable belief that Tello would be at the house. He testified that they knocked on both the front door and the back door and stated that they were police officers and that they had a search warrant. They received no response. Nesler testified that the five of them then went in the unlocked back door of the house. He testified that Tello was asleep in the front bedroom when they entered the house. He related that he and Gillen woke Tello, showed him the search warrant and arrested him. After Tello was taken to the Jackson County jail, the police searched the house. Chief Deputy Gillen's testimony at the hearing was substantially the same as Nesler's except that he testified that he did not know whether or not Tello was going to be at the house.

Tello testified that he was at home asleep when the police arrived. He stated that he was never shown a warrant and that both the back and front doors to the house were locked at the time the police arrived.

Based on the testimony at Tello and Ms. Kite's hearings, the trial court entered an order on September 12, 1979, quashing both Ms. Kite's and Tello's arrests and suppressing their subsequent statements to the police.

With respect to Ms. Kite, the trial court found that the arresting officer had no knowledge as to why he was arresting her and that there were no exigent circumstances justifying the arrest. The court also found that the arresting officer could not be said to be carrying out the arrest based on "imputed information" since the request to arrest came from a different, independent police agency. The trial court concluded that the arresting officer did not have probable cause to arrest Ms. Kite and that her arrest must be quashed. Further, the trial court found, with respect to Tello, that the police entered Tello's residence and arrested him without a warrant and that there were no exigent circumstances justifying the arrest without a warrant. The court concluded that Tello's arrest must be quashed, in spite of the fact that the police had probable cause to arrest him. The court also suppressed both Ms. Kite's and Tello's statements to the police because they were made as the result of illegal arrests.

Additionally, the State moved to admit the transcript of the victim's preliminary hearing testimony at trial, the witness having become available since the time of the preliminary hearing. A hearing on the State's motion was held on August 27, 1979, at which the State introduced evidence that O'Brien had disappeared, that the State had searched diligently for him, and that, through no fault of the State, the witness could not be found.

The trial court, after hearing the evidence, found that O'Brien was unavailable for trial without any fault on the part of the State or defendants. Nevertheless, the court denied the State's motion to admit the transcript of O'Brien's preliminary hearing testimony on the grounds that to permit the use of the transcript at trial would be a violation of due process. In its order of August 28, 1979, the trial court stated:

"A. The same trial judge had conducted the preliminary hearing and has had an opportunity to observe the missing witness. The witness was evasive, nervous and loquacious. These qualities of demeanor obviously would not show up in a transcript.
(1) Although the trial court may accept such testimony for the limited purpose of a preliminary hearing—that of determining probable cause—the trier of fact at the trial would have a different response with regard to such testimony.

\* \* \*

E. The court is of the further opinion that even if the Confrontation

Clauses of the Illinois and Federal Constitutions (Ill. Const., 1970, Art. 1, sec. 8, and U.S. Const. Amend. VI) have been satisfied, the facts of this case would, if the court permitted the use of O'Brien's preliminary hearing transcript at trial, violate the due [*sic*] Process Clauses of both documents (Ill. Const., 1970, Art. 1, sec. 2; U.S. Const. Amendments 5 and 14.)"

The trial court further noted that the complaining witness had a criminal record involving drugs, which was not extensively inquired into at the preliminary hearing; objections to defense questions pertaining to the witness' motivation, bias and prior dealings with defendants were sustained at the preliminary hearing on the grounds of relevancy; and that, further, the witness' testimony would not be covered by the testimony of other witnesses. The court concluded that it was of the opinion that its order was appealable under Supreme Court Rule 604(a)(1) because it, in effect, suppressed evidence.

The State appealed the trial court's ruling excluding O'Brien's preliminary hearing testimony. Defendants, relying on *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16, urge that under Supreme Court Rule 604(a)(1) the trial court's ruling is an evidentiary ruling not a suppression order and, therefore, not appealable.

This issue was recently addressed by our supreme court in *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501. In *People v. Young*, as well as in the case at bar, the issue presented is whether an order "suppressing" evidence is appealable by the State under Rule 604(a)(1) where such evidence was suppressed on grounds other than the basis that it was obtained as a result of an illegal search and seizure or an involuntary confession.

In *People v. Young*, defendant was charged with leaving the scene of an accident and driving too fast for conditions in violation of sections 11—401(a) and 11—601(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, pars. 11—401(a), 11—601(a)). Defendant moved to suppress his mandatory statements made in connection with the accident, which were required by section 11—401(a), contending that the immunity provision of such section precluded their use against him. The trial court ordered the statements suppressed. The State appealed, and the appellate court dismissed the appeal on the grounds that the order was not appealable under Rule 604(a)(1). The supreme court, after discussing the gradual expansion of the State's right to appeal in criminal cases and weighing the various interests of defendants, the judicial system, and society as a whole, concluded that "Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case." (*People v. Young* (1980), 82 Ill.

2d 234, 247, 412 N.E.2d 501, 507.) The court then overruled *Van De Rostyne*, relied upon by defendants, to the extent that it was contrary to the opinion expressed by the court in *People v. Young*. Parenthetically, we note that the court in *People v. Young* held that its requirement that the prosecutor make certification of the substantial impairment of the State's ability to prosecute the case was effective immediately, but that for "any case currently in the appellate process, however, it is waived." The opinion in *People v. Young* was filed October 17, 1980, and the instant case was in the appellate process at the time; therefore, any absence of the prosecutor's certificate is of no consequence.

We conclude, therefore, that the order entered in this court excluding O'Brien's preliminary hearing testimony is appealable by the State.

■■ The State urges that the trial court erred in excluding O'Brien's preliminary hearing testimony where there was adequate opportunity for cross-examination at the preliminary hearing and defendant availed themselves of that opportunity.

The trial court in its order denying the State's motion emphasized that the witness, when testifying at the preliminary hearing, was evasive, loquacious and nervous. It concluded that these qualities of demeanor could not adequately be conveyed to the trier of fact through a reading of the transcript of O'Brien's testimony and that to allow the transcript in place of testimony would violate defendants' rights under the due process and confrontation clauses.

The question of the admissibility of preliminary hearing testimony was addressed by our supreme court in *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116, *cert. denied* (1977), 431 U.S. 918, 53 L. Ed. 2d 229, 97 S. Ct. 2184, and *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121. The court concluded that where a witness is unavailable at trial through no fault of the State, preliminary hearing testimony may be admitted but that the determination of admissibility must be made on a case by case basis taking into consideration the following factors: (1) whether defendant was present at the previous hearing; and (2) whether defendant had an adequate opportunity to cross-examine the witness. An adequate opportunity to cross-examine the witness was interpreted by the court in *Horton* to mean an opportunity effectively to cross-examine, and merely providing an opportunity to cross-examine at the preliminary hearing is not *per se* an adequate opportunity. In determining whether an adequate opportunity to cross-examine the witness has been afforded defendant, the courts have considered: (1) whether any undue restrictions were placed upon defendant's right to cross-examine the witness (*People v. Behm* (1977), 49 Ill. App. 3d 574, 364 N.E.2d 636); (2) the length and extent of cross-examination (*People v. Haywood* (1978), 60 Ill. App. 3d 236, 376 N.E.2d 328); (3) whether the same evidence would be covered

by other witnesses (*People v. Behm*); and (4) whether discrepancies in the witnesses' testimony pertain to material issues (*People v. Chism* (1978), 65 Ill. App. 3d 33, 382 N.E.2d 377).

In the instant case, the qualities of being evasive and loquacious, ascribed to the witness by the trial court, would be apparent to the trier of fact from a reading of the transcript. Whether or not O'Brien was nervous, a condition present in many, if not most, witnesses, is immaterial. Further, defendants' cross-examination of the witness is reported on fourteen pages of the transcript. Inquiry was made into the details of the occurrence and the sequence of events as well as the witness' prior convictions, his length of association with defendants, and his possible indebtedness to defendants. The cross-examination of O'Brien was lengthier than the direct examination and ranged beyond the scope of the direct examination.

The Supreme Court recently in *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, stated that it reaffirmed the rationale that the confrontation clause reflects a preference for face-to-face confrontation at trial; however, it stated that it also recognized that the testimony of an unavailable witness may be admissible if it bears an adequate "indicia of reliability." The court in *Ohio v. Roberts* considered whether defense counsel had an adequate opportunity to cross-examine the witness at the prior proceeding and whether counsel availed himself of that opportunity. The court concluded that these standards had been met and held that the trial court properly admitted the transcript of the unavailable witness' preliminary hearing testimony.

We conclude, therefore, based on the considerations enumerated both by the Supreme Court and our own courts, that the trial court erred in denying the State's motion to admit the transcript of O'Brien's preliminary hearing testimony. Because of the nature and scope of the cross-examination of O'Brien by defense counsel, we conclude that there was adequate "indicia of reliability" to warrant the use of such transcript at trial.

We also conclude that of the three qualities of the witness' demeanor which the trial court held reflected upon his credibility, his evasiveness, nervousness, and loquaciousness, only his evasiveness would indicate the lack of credibility on the part of the witness. As we have stated, it is not at all uncommon for a witness to be nervous; and, if being evasive and loquacious indicate that a witness' testimony is incredible, such demeanor would be as readily apparent from a reading of the transcript as it would be from observation at trial. Further, we know of no authority for a trial court to exclude proffered testimony of a witness simply because the court is of the opinion that the witness is not credible.

The State next contends on appeal that the trial court erred in

quashing Ms. Kite's and Tello's arrests and their subsequent statements to the police.

The trial court found that the arrest of Ms. Kite was illegal because the Murphysboro police officer testified that at the time he stopped Ms. Kite, she was not violating any laws nor did he know why the Jackson County sheriff's department had requested that the Murphysboro police detain her. The trial court found that the Murphysboro police department was a different, independent police agency than the Jackson County sheriff's department. Thereupon the court held that while the Jackson County sheriff's department had knowledge sufficient for probable cause to arrest, such knowledge could not be imputed to the Murphysboro police.

There was a conflict in the evidence at the hearing on the motion to quash Ms. Kite's arrest as to whether the Murphysboro police merely detained Ms. Kite until a deputy from the Jackson County sheriff's department arrived or whether the Murphysboro police arrested her. Ms. Kite testified that the Murphysboro police told her that she was under arrest while Officer Graff of the Murphysboro police testified that they detained her until Deputy Nesler arrived. Nesler initially testified that Ms. Kite was under arrest when he arrived at Green's IGA, but on cross-examination he stated that he arrested her when he arrived at Green's. Nesler also testified that he had informed the police dispatcher for the Murphysboro police department of the reasons for wanting Ms. Kite stopped and held.

■ Regardless of whether the Murphysboro police detained Ms. Kite pending arrest by the Jackson County sheriff's department or whether the Murphysboro police actually arrested her, we conclude that the arrest was valid. The Jackson County sheriff's department had requested the assistance of the Murphysboro police department and asked that they maintain a surveillance of 1933 Minton Street and the car. Nesler testified that he had informed the Murphysboro police department of the reasons for the surveillance of the house and the car.

In *People v. Peak* (1963), 29 Ill. 2d 343, 194 N.E.2d 322, our supreme court held that when police officers are working together, the knowledge of each is the knowledge of all and the arresting officer has the right to rely on the knowledge of the officer giving the command. The Murphysboro police department was working with the Jackson County sheriff's department at the sheriff's department's request. Deputy Nesler of the sheriff's department, based on the information he received from O'Brien, had sufficient grounds to constitute probable cause to arrest Ms. Kite. Nesler gave the command to detain Ms. Kite, and the Murphysboro police were entitled to rely on Nesler's knowledge because their two agencies were working together in this regard. This court has held that regardless

of the fact that two independent police agencies are not working together, one agency may still lawfully arrest an individual at the request of another without knowledge sufficient to constitute probable cause provided that the police agency requesting the arrest does have sufficient probable cause. *People v. Walker* (1977), 45 Ill. App. 3d 627, 360 N.E.2d 64.

In the instant case, the knowledge of the Jackson County sheriff's department legally may be imputed to the Murphysboro police officers. We conclude that the trial court erred in holding that Ms. Kite was unlawfully arrested based on the finding that the knowledge of the Jackson County sheriff's department could not be imputed to the Murphysboro police department.

The State also appeals the order of the trial court suppressing the arrest of Tello on the grounds that he was arrested in his home, absent any exigent circumstances and without an arrest warrant. Defendant relies on the Supreme Court's recent decision in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and our supreme court's decision in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, as supporting his argument that the arrest was properly quashed.

We find *Payton v. New York* to be distinguishable from the instant case. In *Payton* the police entered defendant's home for the purpose of effecting a felony arrest without an arrest warrant and in the absence of any exigent circumstances. Defendant was not at home at the time, but the police searched the apartment and seized certain items connecting him with a murder. The court, in the same opinion, also reversed the conviction of one Obie Riddick. In that case the police went to Riddick's home without an arrest warrant in order to arrest Riddick. Riddick's three-year-old son answered the door and the police saw Riddick sitting on a bed. The police entered, arrested Riddick, searched a drawer close to the bed and seized certain drug paraphernalia. Riddick was charged with narcotics violations.

In the case at bar, when the Jackson County sheriff's department went to Tello's residence, they had a search warrant for the premises. After knocking and receiving no answer the police entered the house and found Tello asleep in the bedroom. The possession of a search warrant distinguishes the instant case from *Payton,* where the police had neither an arrest warrant nor a search warrant. The court in *Payton* criticized entry into a home without a warrant, stating that whether the object is to effect an arrest or a search is immaterial, that each purpose is equally intrusive. In that regard, the court in *Payton* stated:

> "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold

may not reasonably be crossed without a warrant." (*Payton v. New York* (1980), 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.)

It is apparent that the court emphasized that a warrantless entry was unreasonable. In the case at bar, the police entered Tello's residence with a search warrant which affords the same justification for their entry into his residence as would an arrest warrant. (*Payton v. New York.*) Tello was found in the house after a lawful entry. The officers had probable cause to believe that Tello had committed a felony based on the information related to them by O'Brien; consequently, his arrest was lawful pursuant to the provisions of section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)). We therefore conclude that the trial court erred in finding that Tello's arrest without an arrest warrant was not a lawful arrest. The police had a right to enter Tello's residence; and once lawfully inside, they had a right to arrest him. We further conclude that *People v. Abney*, relied upon by defendant, is inapplicable to the instant case because there, as in *Payton*, the police entered the defendant's house without any warrant.

■■ Finally, the State contends that the trial court erred in suppressing the statements made to the police by Ms. Kite and Tello. We agree. These statements were suppressed because the court determined that they resulted from unlawful arrests. Since we have found the arrests of both Ms. Kite and Tello to be lawful, their statements subsequent to their arrests are admissible, there being no finding by the trial court that either Ms. Kite's or Tello's statement was involuntary.

For the foregoing reasons, the orders of the circuit court of Jackson County are reversed and this cause is remanded.

Reversed and remanded.

JONES and HARRISON, JJ., concur.