LOSAY KENDOR, Plaintiff-Appellant, *v.* THE DEPARTMENT OF COR-RECTIONS *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—1267

Opinion filed August 10, 1984.

Rick Allen White, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Thomas P. Marnell, Assistant Attorney General, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Losay Kendor appeals from a circuit court order which affirmed the decision of defendant Civil Service Commission (Commission) to discharge him from employment with defendant Department of Corrections (Department). Plaintiff maintains that the Commission erred in receiving certain evidence and that the Commission's decision was contrary to the manifest weight of the evidence. The following facts taken from the administrative record are material to our decision.

Plaintiff was employed as a parole counselor for 10 years prior to his discharge on June 21, 1980. A parolee under plaintiff's charge, Jamie Soto, contacted the Cook County State's Attorney's office in April of 1980 to report that plaintiff had solicited a bribe. R. B. Sonneveld, an investigator for the Illinois Department of Law Enforcement (IDLE), was assigned to investigate the charge, and on May 6, 1980, he directed Soto to call plaintiff and arrange a meeting. The initial call ended inconclusively, and Sonneveld waited for plaintiff's return call, but finally left Soto's apartment. Soto called Sonneveld later that day and said that the meeting was set for the next day. Sonneveld requested and received $150 from the State's Attorney's office.

On May 7, 1980, Sonneveld and another agent went to Soto's apartment, where Sonneveld gave Soto $100 to place in a windowed envelope and $50 to put in his pocket. When plaintiff's car approached, Sonneveld and the other agent secreted themselves in a closet. Sonneveld heard Soto say that he had the money and ask whether they were finished; plaintiff replied yes, they were finished, and asked if Soto would accompany him out of the apartment.

The IDLE agents placed plaintiff under arrest, searched him and read him his rights. Plaintiff possessed the envelope containing $100 of the funds obtained from the State's Attorney's office. The agents recovered from Soto his parole discharge papers, dated October 4, 1979, as well as the remaining $50. Sonneveld testified that plaintiff claimed to be in the process of arresting Soto, but he recalled that the conversation occurred en route to the station rather than at the scene, as plaintiff believed.

On cross-examination, counsel for plaintiff asked Sonneveld to relate what Soto had said concerning his release from parole. Sonneveld stated:

> "Mr. Soto had a telephone conversation with Mr. Kendor. In that phone conversation Mr. Kendor told Mr. Soto that he had gotten Mr. Soto off of parole or got him discharged from pa-

role. He then asked Mr. Soto where he was employed and how much he made and he told him. Mr. Soto responded he worked at AT&T I believe and he made $159 a week and I believe the response from Mr. Kendor was 'It will cost you $150 for your discharge papers.' "

Plaintiff's supervisors, Gerald Gist and Eriberto Campos, testified that plaintiff had spoken to them about bribes in the weeks preceding May 7, 1980. Gist advised plaintiff to document any bribe offer and suggested that plaintiff prepare a letter describing the circumstances, mail it to himself, and then retain the sealed letter. In a second conversation between plaintiff and Gist, plaintiff mentioned "a guy from Texas" who had offered a bribe. Campos recalled that he and plaintiff had discussed an incident involving a parole officer who had been arrested for bribery. Also, Campos stated that plaintiff came into his office in late April or early May and asked what Campos would do if offered a bribe; Campos said he would call the State's Attorney's office to have the person arrested. Both supervisors stated that parole discharge papers could be delivered either in person or by mail, and Gist stated that when an arrest was planned in advance, "normal procedure" was to arrange for more than one agent to participate in the arrest.

Plaintiff testified that he received Soto's discharge papers in November of 1979, after Soto had departed for Michigan pursuant to a travel permit. Plaintiff was aware that such papers could be mailed to parolees, but explained that he had been unable to locate Soto. Although he testified in his criminal trial that he had tried to contact Soto by mail and by telephone, at the administrative hearing plaintiff could not recall mailing anything to Soto in Michigan. Plaintiff stated that Soto offered the bribe during the first telephone conversation between the two after Soto's return from Michigan, despite the fact that plaintiff notified Soto in the same conversation that he had already been discharged from parole.

Plaintiff testified further that he had earned an associate's degree in law enforcement, a bachelor's degree in criminal justice and political science, a master's degree in criminal justice, and he had been taught the importance of documenting a criminal investigation. He expected the cashier's check or money order which he had requested of Soto to serve as documentation, but he did not examine the envelope containing cash before the arrest. Plaintiff stated that he had been trained to seek guidance from his superiors when he was uncertain, and for this reason, he initiated several conversations concerning bribery. However, plaintiff's recollection of these conversations differed

markedly from that of Gist and Campos: he recalled that Gist advised placing the proceeds of the bribe in an envelope to be mailed to himself, and Campos said if he was offered a bribe, he would effect the arrest personally. Plaintiff also recalled mentioning Soto's name several times, but said that he was sketchy about the details because he did not trust anyone in the parole office.

Although an administrative subpoena had been served upon Soto, he did not appear on the initial hearing date, September 23, 1980, and the Department of Corrections was granted a continuance over plaintiff's objection in order to secure Soto's attendance. The Attorney General filed a petition to enforce the subpoena, and the circuit court issued an order in October of 1980 commanding Soto to obey the subpoena. Hearing dates of November 21 and December 30, 1980, were continued due to illness of the hearing officer. The hearing was rescheduled for January 9, 1981, and Soto received notice of the new date by certified mail, but again failed to appear. Counsel for the Department of Corrections represented to the hearing officer that the Attorney General's office had received a message indicating that Soto was ill; the hearing was continued to February 6, 1981, again over plaintiff's objection, and Soto was again notified by certified mail.

When Soto failed to appear for the February 6 hearing, the Department of Corrections moved to admit the transcript of Soto's testimony from plaintiff's criminal trial into evidence to become part of the administrative record. Counsel for the Department stated that the person who answered Soto's phone said that he was out of town and then hung up. After accepting briefs and argument, the hearing officer ruled that the transcript should be received into evidence.

The hearing officer found that clear and convincing evidence indicated plaintiff solicited and accepted a bribe, and recommended that plaintiff be discharged. The Civil Service Commission adopted the findings of the hearing officer and rendered its final decision in accordance with the recommendation on April 16, 1981. On April 26, 1983, in an action brought by plaintiff under the Administrative Review Act, the circuit court of Cook County affirmed the Commission's decision. Plaintiff appeals.

OPINION

Plaintiff first contends that the Commission erred in considering the transcript of Jamie Soto's testimony. He argues that the transcript was inadmissible hearsay and that Soto was not legally unavailable so as to justify its admission under the prior sworn testimony exception to the hearsay rule. Plaintiff points to the hearing officer's

explicit finding that the case turned upon the credibility of Soto and that of plaintiff, but also notes that the hearing officer never observed Soto's demeanor, an important factor in assessing credibility.

Defendants rejoin that Soto's continued absence despite diligent efforts to secure his presence amounted to legal unavailability and brought the transcript within the former testimony exception to the hearsay rule. Defendants also argue that plaintiff was not prejudiced by the admission of the transcript.

■■■ The Illinois Administrative Procedure Act provides in pertinent part:

> "The rules of evidence and privilege as applied in civil cases in the Circuit Courts of this State shall be followed. However, evidence not admissible under such rules of evidence may be admitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." (Ill. Rev. Stat. 1979, ch. 127, par. 1012(a).)

Under the Administrative Review Act, failure to observe the technical rules of evidence will not justify reversal of any agency determination unless a party's rights are materially affected and the error results in substantial injustice. (Ill. Rev. Stat. 1979, ch. 110, par. 275(2).) The opportunity to test a witness by personal cross-examination is fundamental to our fact-finding process, which process includes the adjudicative function of administrative bodies (see Ill. Rev. Stat. 1979, ch. 127, par. 1012(b); *Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 373, 406 N.E.2d 863), and so hearsay evidence is generally inadmissible in administrative proceedings. (*Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 501, 415 N.E.2d 1249.) Illinois recognizes an exception to the hearsay rule for former testimony, provided that the witness is unavailable and that "the matter in issue and the parties are essentially the same in both causes." *George v. Moorhead* (1948), 399 Ill. 497, 501, 78 N.E.2d 216; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 804.2 (4th ed., 1984).

■ The proponent of evidence is under a duty to exercise good faith and reasonable diligence to secure the presence of witnesses; what constitutes "good faith" and "reasonable" efforts is determined on a case-by-case basis after careful review of the particular facts and circumstances. (*People v. Brown* (1977), 47 Ill. App. 3d 616, 365 N.E.2d 15.) A similar set of facts presented the same issue for consideration in *Buckley v. Cronkhite* (1979), 74 Ill. App. 3d 487, 393 N.E.2d 60. There, the proponents served a subpoena upon the witness

and received her assurance that she would appear; when she did not, the proponents made several attempts to contact her in person and by phone. Noting that the proponents' failure to enforce the subpoena was not dispositive, the *Buckley* court found that diligence was shown. 74 Ill. App. 3d 487, 491, 393 N.E.2d 60.

In the circumstances of this case, we believe that the Department of Corrections showed diligence in its efforts to secure Soto's presence at the administrative hearing. The Department subpoened Soto, and when he failed to appear, it sought and obtained an order enforcing the subpoena. The Department attempted to assure that Soto was notified of each continuance, and repeatedly tried to reach him by phone. Although plaintiff urges that the Department might have obtained a second order enforcing the subpoena or used more coercive language in its notice letters, we note that plaintiff opposed a continuance, which would have permitted the Department to take additional steps. In any case, we agree with the court in *Buckley* that the proponents' omissions, while relevant to diligence, are not dispositive where, as here, ample affirmance steps demonstrate good faith. We conclude that Soto's absence despite reasonable efforts to secure his presence amounted to unavailability, and the admission of his prior sworn testimony was not error.

Moreover, we would find that the admission of the transcript, if error, did not so prejudice plaintiff as to warrant reversal. On the facts, we note that counsel for plaintiff elicited Soto's version of events in hearsay form from Sonneveld. And although the issue was characterized as one of credibility, the hearing officer's findings actually turn upon the inherent plausibility of the witnesses' respective stories rather than upon a resolution of particular conflicting statements.

In addition, the nature of the evidence and the proceedings tended to ameliorate the danger of considering the transcript. Soto testified under oath and was subjected to extensive cross-examination, facts generally understood to enhance the reliability of hearsay. (See *Ohio v. Roberts* (1980), 448 U.S. 56, 69-71, 65 L. Ed. 2d 597, 609-11, 100 S. Ct. 2531, 2540-41; *People v. Kite* (1981), 97 Ill. App. 3d 817, 823-24, 423 N.E.2d 524.) The preference for live testimony is based on the ability to observe the witness' demeanor, and while recognizing its importance, we believe the preference is more meaningful in a jury trial than in an administrative proceeding, where facts are determined by a hearing officer who presumably understands the inherent dangers of hearsay evidence. (See generally 3 K. Davis, Administrative Law Treatise sec. 16:3 (2d ed. 1980).) In sum, we hold that admission

of the transcript was not error, and if error, did not warrant reversal.

Plaintiff also contends that the Commission's determination was contrary to the manifest weight of the evidence. He points to evidence that he discussed bribe offers with his supervisors, he attempted to arrange the bribe at the parole office, he requested a cashier's check or money order from Soto, he asked Soto to accompany him out of the apartment after the exchange and he told investigators that he had planned to arrest Soto. Plaintiff argues that in view of this reliable evidence and his acquittal of criminal bribery charges, the Commission could not have found clear and convincing evidence of his guilt.

■■ ■ The standard of review of factual determinations by administrative bodies is whether such findings are contrary to the manifest weight of the evidence. (*Starkey v. Civil Service Com.* (1983), 97 Ill. 2d 91, 97, 454 N.E.2d 265.) In order for a finding to be against the plain and evident weight of the evidence, an opposite conclusion should be clearly apparent. (*In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553.) Our review is guided by the manifest weight standard, notwithstanding the standard of proof applicable at the administrative level. (See *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53-54, 426 N.E.2d 1276; cf. *Starkey v. Civil Service Com.* (1982), 105 Ill. App. 3d 904, 435 N.E.2d 176 *rev'd* (1983), 97 Ill. 2d 91, 454 N.E.2d 265 (standard of review limited to manifest weight without regard to standard of proof).) Of course, whether the correct standard of proof was applied is a fully reviewable legal question (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14, 398 N.E.2d 198), but we need not reach the parties' argument concerning the standard of proof in this case, because we find that the Commission's determination of bribery is supported by clear and convincing evidence.

Although undisputed evidence indicated that plaintiff requested a cashier's check or money order from Soto and that plaintiff asked Soto to leave the apartment with him, the inference drawn by plaintiff, that he intended to arrest Soto, is far from apparent. Other evidence claimed by plaintiff to be undisputed was in fact disputed, as for example, the attempt to arrange the bribe at the parole office, which plaintiff stated Soto rejected and which Soto said plaintiff rejected. Too, the inferences to be drawn from plaintiff's conversations with his supervisors and his statements after arrest depend upon whose version is believed. Our scrutiny of the record has revealed no fact which points to a conclusion opposite that of the Commission.

The hearing officer found that plaintiff's conduct was illogical if

he intended to arrest Soto. Plaintiff sought his supervisors' advice concerning procedures in bribe situations, then ignored the advice. He was trained to document criminal investigations, but he made no attempt to document this investigation. He trusted no one in the Department, but did not think to report the bribe outside the Department, nor did he articulate any reason for such widespread distrust. He failed to arrange for a backup officer at the arrest.

■ Further, the hearing officer found plaintiff's version of the bribe itself fundamentally implausible. She reasoned that if plaintiff advised Soto that he had been discharged from parole for months, as plaintiff ought to have done and said he had done, then Soto would have no reason to offer the bribe. The hearing officer correctly noted that the "clear and convincing" standard of proof did not require proof beyond a reasonable doubt, the standard upon which plaintiff was acquitted of criminal charges. (See *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 13-14, 398 N.E.2d 198, and authority cited therein.) The Commission found, through its hearing officer, that clear and convincing evidence indicated plaintiff solicited and accepted a bribe. The finding was not contrary to the manifest weight of the evidence; thus, the Commission's decision must be sustained.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.