CHARLES FELLE, Plaintiff-Appellee, v. THE METROPOLITAN SANI-
TARY DISTRICT OF GREATER CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 87—1077·

Opinion filed February 23, 1988.—Rehearing denied April 5, 1988.

Allen S. Lavin, of Chicago (James B. Murray and Maureen Whelan, of counsel), for appellants.

John R. Ruddy, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Charles Felle filed a complaint before the Metropolitan Sanitary District's Civil Service Board (Board) which sought review of its February 28, 1985, civil service examination for the position of security guard lieutenant. On October 22, 1985, after a hearing, the Board upheld the validity of the examination and dismissed Felle's complaint.

Thereafter Felle filed a complaint in circuit court against the Board and its director of personnel, Donald R. Morrison, seeking review of the Board's decision and declaratory relief barring the two candidates who took the test and were appointed security guard lieutenants from remaining in those positions. On March 25, 1987, the trial court issued an order wherein it reversed the Board's decision, and granted the relief sought by Felle. The Board and Morrison appeal from that order.

The Metropolitan Sanitary District of Greater Chicago was organized by "An Act to create sanitary districts ***" (Ill. Rev. Stat. 1985, ch. 42, par. 320 et seq.), which governs its employment procedures for civil service employees (Ill. Rev. Stat. 1985, ch. 42; par. 323.7), and also mandates the process for administering promotional examinations. On February 28, 1985, the appellants gave an oral examination for the position of security guard lieutenant, and Felle, who had served for the preceding three years in the position for which he was being tested, took the exam along with a group of other eligible candidates.

On March 1, 1985, Felle was notified by mail that he did not pass the examination. After Morrison denied Felle's challenge to the validity of the exam, he appealed to the Board, which held a hearing at which all parties were represented by counsel.

Robert Pyskacek, senior personnel analyst, in testifying as to the nature of the examination, stated that he prepared a job analysis, and aided by several experts, he devised 10 questions for the test. The candidates were asked the questions by a four-member panel of outside experts who were briefed by Pyskacek prior to the examination. He informed them that they should test for "knowledge of security principles and practices, knowledge of law enforcement, knowledge of supervision, administrative and management, and oral communications." Pyskacek also testified that he told the panel to spend approxi-

mately 45 minutes with each candidate, and they were to ask some, but not necessarily all, of the 10 proposed questions. The examiners were permitted to ask the questions in any order they chose, but they were not required to use the same questions with each candidate.

Pyskacek also testified that he instructed the panelists that an overall score of 70 was passing, and that they could go up to 100 in their scoring. He noted that the grading sheets indicated 70 was a passing score, and that the sheets also listed the four categories upon which the candidates were to be graded. Finally, he asked the testers to make comments about the candidates on the scoring sheets.

Pyskacek's instructions were based upon the District's Personnel Rule 6.56, which provided as follows:

> "Numerical ratings shall be assigned in accordance with a predefined scale, in which the score of seventy (70), or its equivalent, is assigned to a candidate who is barely acceptable ***. For each candidate whose average score of all examiners combined is less than seventy (70) and who fails the examination therefore, the Oral Board shall prepare a statement of its reasons for finding that this candidate is less than acceptable."

Rudolph E. Nimocks, chief of the organized crime division of the Chicago police department and one of the examiners, corroborated Pyskacek's testimony about the structure of the examination. The other examiner who testified was Thomas W. Cernock, chief of police for the Village of North Riverside, whose testimony consisted primarily of a discussion of the procedure the panel used in examining applicants, which is not a subject of this appeal.

His testimony concerning the grading scale, however, is a critical element of the case at bar. During Cernock's direct examination by Felle's counsel, the following exchange occurred:

> "Q. Were you aware of the personnel rule of the Metropolitan Sanitary District, Section 6.56 of the Rules, which states that a passing grade means just barely acceptable?
>
> A. I don't believe so, sir.
>
> Q. Let me read the phrase ***; 'Numerical ratings shall be assigned in accordance with a pre-defined scale, in which the score of 70, or its equivalent, is assigned to a candidate who is barely acceptable ***.' So in other words, passing is someone who is barely acceptable, were you aware of that when you were grading?
>
> A. I remember a 70 was a score that was a passing score.
>
> Q. Do you realize that meant barely acceptable?
>
> A. No, sir.

Q. As opposed to, you know,—if you are thinking in terms of a grade from 70—or 1 to 100, 70 being passing and yet, when we say that 70, you know that means just barely acceptable. *** Were you looking at it that way when you graded?

A. I don't believe I was looking at it that way, sir."

During cross-examination, Cernock testified further about his understanding of the grading scale for the examination:

"Q. Was it your understanding that when there was a score of less than 70, that the person had failed the examination?

A. It was my understanding that the four scores would be combined or somehow tallied together. I did not at that time know, nor do I know at this time now how the other candidates were scored or what each evaluator—how they scored those candidates.

Q. With respect to your evaluation, was a 70 passing or was that not passing on the examination?

A. 70 was not passing or—excuse me. 70 was passing. A 69 would have been below passing."

Cernock gave Felle a 57.5, while the other three examiners gave him an average score of 70. Accordingly, if Cernock had given Felle a score of at least 70, he would have passed the examination. Moreover, Cernock was the only examiner who did not supply reasons on his grading sheet for Felle's score because of his belief that the individual in charge of the test would issue a final report. Despite the previously quoted requirement of Rule 6.56 that the panel prepare a statement of its reasons for failing a candidate, no such report was ever made.

The Board held that it was not against the manifest weight of the evidence for the appellants to fail Felle, who appealed that decision to the circuit court. The court found that the examination was job related and given under "substantially the same conditions." It continued as follows:

"Though the examiners were experienced law enforcement officers, they did not all apply the Personnel Rules. Personnel Rule 6.56 states that a passing grade of 70 indicates the candidate receiving it is barely acceptable. It further provides that the scale should be applied fairly and equally to all competitors. Thomas W. Cernock, who gave plaintiff a failing score of 57.5, stated he was not aware of or failed to consider this testing standard and admitted that had he known the proper standard he may have changed his score. Mr. Cernock's score was determinative in plaintiff's case. The average of the scores of the other examiners, 65, 70 and 75, would have resulted in peti-

tioner receiving a passing grade. Hence, it is clear that at least one examiner because of his lack of knowledge failed to administer a fair and equal examination.

Rule 6.56 was also violated because all of the examiners giving plaintiff a failing grade did not give reasons. Rule 6.56 provides in part 'For each candidate whose average score of all examiners combined is less than seventy (70) and who fails the examination therefore, the Oral Board shall prepare a statement of its reasons for finding that this candidate is less than acceptable.' No joint statement was prepared by the Board members. Three of the examiners gave separate reasons for their scores. Cernock, whose failing grade was determinative, gave no reasons."

Accordingly, the circuit court reversed the Board's decision, voided the examination, and ordered that another one be given.

OPINION

■■ ■ Courts should not overturn decisions of an administrative agency unless they are against the manifest weight of the evidence. (*Kendor v. Department of Corrections* (1984), 126 Ill. App. 3d 648, 467 N.E.2d 1107; *Department of Mental Health & Developmental Disabilities v. Illinois Civil Service Comm'n* (1982), 103 Ill. App. 3d 954, 431 N.E.2d 1330.) The trial judge justified her decision in the instant case on two grounds. First, she asserted that Cernock was not sufficiently aware of the rules governing the test. We cannot agree with such a conclusion.

In his testimony, Cernock admittedly was unable to recite the precise verbal formulation of the grading scale: 70 is "barely acceptable." But we should not restrict our analysis to deciding whether a member of a panel of civil service examiners recognizes certain buzz words as sovereign talismen; rather, we must determine if he comprehends the grading scale. In the instant case, Cernock testified before the Board that his understanding was as follows: "70 was not passing or—excuse me. 70 was passing. A 69 would have been below passing." Thus, he recognized 70 to be the lowest possible passing grade, which by definition, unmistakably equates with "barely acceptable." Accordingly, we deem Cernock's knowledge of the Board's testing standards to be unassailably correct.

In her decision, and as an important part of her holding, the trial judge contended that Cernock might have altered his score for Felle if he had known 70 was "barely acceptable"; yet the record is entirely barren of any evidence on which to base such a conclusion. On the

contrary, given his total comprehension of the Board's testing standards there appears to be no reason that would impel him to alter the score he gave Felle.

Because Cernock clearly understood and followed the testing procedures, the appellants are correct in their assertion that *Meana v. Morrison* (1975), 28 Ill. App. 3d 849, 329 N.E.2d 535, is distinguishable. In *Meana*, the court voided the examination because the District violated its own rules and compromised the competitive nature of the test by allowing calculators to be used in the examination although the examination call sheet prohibited them. In the case at bar, Cernock's inability to quote the scoring standard verbatim did not affect the integrity of the examination.

The trial judge's second ground for voiding the examination was the Board's failure to follow the District's Personnel Rule 6.56, which provides that the panel should "prepare a statement of its reasons for finding that this candidate is less than acceptable." No such report was prepared, although Felle did view the individual grading sheets. Each examiner, except Cernock, who gave Felle his lowest grade, provided written comments.

■ Felle stresses the familiar legal precept that an administrative agency must follow its own rules. (*Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) Clearly, the District failed to observe its own rules in the case *sub judice*. The appellants argue, however, that the District substantially complied with Personnel Rule 6.56, which requires the panel to prepare a report describing its reasons for failing an individual, by allowing Felle to inspect the written comments made by three of the four examiners. Our supreme court has held that administrative bodies need to comply only substantially with the relevant statutory requirements in issuing reports. *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 74-75, 351 N.E.2d 865; *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 299, 319 N.E.2d 794.

■ This court has defined substantial compliance as being "such compliance as will assure that the beneficial effect of the rule will be achieved." (*People v. Baker* (1985), 133 Ill. App. 3d 620, 622, 479 N.E.2d 372.) The principle object of the regulation at issue seems to be that of informing those who fail the examination of their deficiencies so they may profit thereby *in futuro*. Surely, the rule was not designed to enable applicants to pass the test for which they receive the report. Admittedly, the comments of one examiner would not be as instructive for an applicant as a statement of reasons prepared by the

Board. Nevertheless, three examiners made comments which should have proven instructive to Felle and fulfilled the purpose of this requirement.

Moreover, we are unconvinced as to Felle's zeal in determining why the examiners failed him. Although Felle's counsel questioned Chief Cernock extensively during the hearing, at no time did he ask him to explain why he gave Felle a score of 57.5. In oral argument plaintiff's attorney alleged that he did not probe Cernock as to his reasoning in failing Felle because the Board's rules prohibited him from asking such questions. The Board's attorney responded that its rules contain no such restriction. Furthermore, there is no basis in this record for the assertion that the proposed line of questioning was barred; indeed, plaintiff's counsel never even attempted to make a record by asking Cernock such questions. We should like to emphasize, however that we do not mean to imply that an individual must take the affirmative action of seeking administrative review of a decision of the Board in order to compel it to follow its own rules. But here, where the plaintiff did not capitalize upon his opportunity to learn why he received his lowest grade, we do not believe he is justified in now complaining about his failure to receive a report from the Board explaining why he did not pass the examination.

In conclusion, the examiners fairly comprehended the testing procedures. Moreover, the Board substantially complied with Personnel Rule 6.56 and any technical violation thereof by the Board is harmless error. Accordingly, we hold that the circuit court erred in voiding the examination and we thus reinstate the decision of the Metropolitan Sanitary District's Civil Service Board.

Reversed.

HARTMAN, P.J., and BILANDIC, J., concur.