THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KING P. BROWN, Defendant-Appellant.

First District (5th Division)   No. 76-357

Opinion filed March 25, 1977.

John M. Goldberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Leonard J. Wojtecki, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a bench trial, defendant was found guilty of armed robbery and aggravated battery and was sentenced to serve 4 to 12 years in the penitentiary. On appeal defendant contends that preliminary hearing testimony was improperly admitted at trial, and that he was not proved guilty beyond a reasonable doubt. We reverse.

At a preliminary hearing held on March 21, 1974, McArthur Bradford testified that he was the sole attendant on duty at the gas station located at 521 South Laramie Avenue in Chicago, Illinois, at approximately 5:30 a.m., on December 13, 1971. Noble Woods was present in the station at that time awaiting the arrival of his ride to work. A man entered the station and asked Bradford for change for a dollar. Bradford did not have change but gave the man a dime so that the latter could purchase a package of cigarettes from the cigarette machine located in the station. After purchasing a package of cigarettes the man moved towards the door, whirled around, and shot Bradford in the right shoulder. The gunman then declared, "This is a stickup," and forced Woods and Bradford into the station's office. During the robbery which followed, Woods laid his wallet on a desk in the office and Bradford gave the gunman the money he had in his pocket. Woods then pushed the office door into the gunman and ran from the station. The gunman took Bradford's money and Woods' wallet and fled. Lights were on during the incident both in the front of the station and in the back office. Bradford identified the defendant as the man who shot and robbed him on December 13, 1971. Bradford next saw defendant on December 10, 1973, while he was again on duty at the same station. Bradford recognized him and called the police.

During cross-examination Bradford stated that he was shot in the "sales room" of the station where customers customarily pay their bills and that a cigarette machine was located in that room approximately three feet from the station's front door. He was standing near the machine when the gunman entered through the front door. He faced this man while giving him a dime and was about three feet from him while the cigarettes were purchased. During the purchase the gunman faced away from him. Bradford did not stagger or fall after being shot, nor did he feel pain, but he was surprised. He preceded his assailant into the station's rear office pursuant to the latter's order. There Bradford faced his assailant.

Defendant's trial was held on July 2 and 3, 1975. Bradford was not present and counsel for defendant stipulated to the prosecutor's account of the State's efforts to procure Bradford's attendance at trial. In this account the prosecutor explained that the State had sent Chicago Police Investigators Mariano and Newbauer to locate Bradford in December 1974; Investigator Ashby, in March 1975; and Investigator Grig, on May 6, 1975. Mariano and Newbauer checked the post office and telephone company but were unable to locate Bradford. Ashby discovered that Bradford had left the State two years prior to his investigation in March of 1975. Grig went to Bradford's last known address on May 6, 1975, and discovered that Bradford had left the State one year before his investigation. Grig also spoke to a man at the gas station in which the

shooting and robbery occurred and was told that Bradford had moved to Ritchie, Tennessee. Bradford's new location was also referred to at trial as Ripley, Tennessee, and Ripley, Mississippi, but the State and defense counsel agreed that all references to Ripley, Mississippi, were erroneous. The prosecutor also corrected his first report of Grig's findings: Grig had reported Bradford's new location to be Ripley, Tennessee, and not Ritchie, Tennessee. No attempt was made to locate Bradford in Ripley, Tennessee. The preliminary hearing testimony was admitted into evidence over repeated objections by defense counsel.

Noble Woods testified for the State at trial that he stood within the Laramie Avenue gas station on December 13, 1971, at approximately 5:30 a.m. He identified defendant as the man who entered the station at about that time and subsequently shot Bradford and robbed both Bradford and himself. Upon defendant's entrance, Woods glanced at him for a few seconds and then resumed his watch through the station window for his ride to work. Defendant went to the cigarette machine, unsuccessfully attempted to purchase a package of cigarettes, and complained to Bradford, who was sitting in a chair by the machine, that the machine was not working properly. Woods was positioned three or four feet from defendant and his attention was again drawn to him upon hearing the complaint. Woods saw Bradford give defendant a dime, operate the machine for him and give him a package of cigarettes; but defendant was not facing Woods at this time. Woods again resumed his watch for his ride to work. Defendant then turned toward the door, wheeled around, announced a stickup and shot Bradford. Woods turned toward defendant and Bradford after Bradford was shot, but he saw defendant shoot Bradford. Woods became very excited at this juncture. Defendant ordered Woods and Bradford into the back office and followed them into that room. Upon demand, Woods laid his wallet on a table in the back office and Bradford laid a roll of money on the same table. At this point Woods faced defendant for the first time and again stood about three feet from him. Defendant told Bradford to lay down on the floor and the wounded man did so. Woods then pushed the partially open office door into defendant and made his escape. Woods stated that he was in the back room for two or three seconds at most. When he reached the station's gas pumps, Woods observed defendant running out of the station's front door, but he glimpsed defendant's face for only a few seconds. Thereafter Woods stopped a passing police car, reported the shooting and robbery, and then caught his ride to work. He did not give the police a description of the gunman prior to defendant's arrest. Both the station and the surrounding gas-pump area were well lit throughout the incident.

Chicago Police Officer Leonard Pikowski testified at trial that on December 10, 1973, he found defendant repairing his car about a half a

block from the gas station where the incident occurred and placed him under arrest. After his arrest, defendant stated that he wanted to go to the gas station and clear the whole thing up. Officer Pikowski returned to the station with defendant. There Bradford stated in the presence of both the officer and defendant that he was positive that defendant was the man who had shot and robbed him on December 13, 1971. Defense counsel repeatedly objected to the admission of the officer's testimony.

OPINION

The first issue presented on appeal is whether the trial court erred in admitting Bradford's preliminary hearing testimony into evidence.

■■ Where a witness testifies at a preliminary hearing and is not present at the subsequent trial, his hearing testimony is allowable in evidence if the accused had an adequate opportunity to cross-examine him during the hearing and the State has made a good-faith, reasonably diligent effort to procure his attendance at trial. See *People v. Burton* (1972), 6 Ill. App. 3d 879, 885, 286 N.E.2d 792, *cert. denied*, 411 U.S. 937, 36 L. Ed. 2d 399, 93 S. Ct. 1917; *cf. California v. Green* (1970), 399 U.S. 149, 165-68, 26 L. Ed. 2d 489, 501-02, 90 S. Ct. 1930, 1938-40; *Barber v. Page* (1968), 390 U.S. 719, 722-26, 20 L. Ed. 2d 255, 258-61, 88 S. Ct. 1318, 1320-22; *Pointer v. Texas* (1965), 380 U.S. 400, 407-08, 13 L. Ed. 2d 923, 928, 85 S. Ct. 1065, 1069-70. But see *People v. Holman* (1924), 313 Ill. 33, 36, 144 N.E. 313; *Bergen v. People* (1856), 17 Ill. 426, 427. See also *Mattox v. United States* (1895), 156 U.S. 237, 240-44, 250, 39 L. Ed. 409, 410-11, 413, 15 S. Ct. 337, 338-40, 343; *People v. Horton* (1976), 65 Ill. 2d 413, 415-16, 358 N.E.2d 1121; *People v. Tennant* (1976), 65 Ill. 2d 401, 408-11, 358 N.E.2d 1116; *People v. Beathea* (1974), 24 Ill. App. 3d 460, 465-66, 321 N.E.2d 458; *People v. Coburn* (1974), 20 Ill. App. 3d 60, 63-64, 313 N.E.2d 270 (per curiam).

Defendant argues that because discovery was unavailable prior to the hearing, he was not afforded an adequate opportunity to cross-examine Bradford. We disagree. Under Supreme Court Rule 411 (Ill. Rev. Stat. 1975, ch. 110A, par. 411), a defense counsel has no right to discovery until after the preliminary hearing. Also, defendant was represented by counsel at the hearing who extensively cross-examined Bradford and who voluntarily terminated the cross-examination. Defendant does not contend that this cross-examination was unduly limited by the hearing judge and the record discloses no significant limitation on the scope or nature of this cross-examination. Under similar circumstances the United States Supreme Court has expressed the opinion that preliminary hearing testimony is admissible at trial if the testifying witness is either dead or otherwise unavailable despite a good-faith effort by the State to produce

him. (See *Green*, at 165-66.) Moreover, if the witness is dead, the rule in Illinois is that an adequate opportunity for cross-examination at a preliminary hearing means an opportunity to effectively cross-examine and whether an effective opportunity has been afforded the accused is determined on a case-by-case basis after a careful review of the facts and circumstances of each case. (See *Horton*, at 416-17.) We believe that the facts and circumstances of this case indicate that the accused was afforded an effective opportunity to cross-examine Bradford at the preliminary hearing, and the facts in this case fit squarely within the parameters of the statement of the United States Supreme Court in *Green*. Therefore, despite the unavailability of discovery until after the preliminary hearing, we hold that there was an adequate opportunity to cross-examine Bradford at the preliminary hearing.

Defendant also urges that the State did not make a good-faith, reasonably diligent effort to secure Bradford's presence at trial.

■■ It is the duty of the State's Attorney to supervise and coordinate efforts to locate witnesses known to be missing prior to trial and secure their presence at trial. Whether good-faith and reasonable diligence has been exercised in these efforts is determined on a case-by-case basis after a careful review of the facts and circumstances of each case. (See *People v. Payne* (1975), 30 Ill. App. 3d 624, 628, 332 N.E.2d 745.) The State has the burden of proving that the steps it took to secure the presence of missing witnesses at trial were made in good-faith and were reasonable under the circumstances. See *Payne*, at 630.

■■ In the case at bar, it was stipulated at trial that the State sent investigators to locate Bradford on three occasions. On May 6, 1975, the date of the last of these efforts, Investigator Grig was told that Bradford had moved to Ripley, Tennessee. Defendant's trial was held on July 2 and 3, 1975, almost two full months after the State's investigator learned that Bradford had moved to another State. Over this period of time the State did not make any effort to verify Bradford's presence in Ripley, Tennessee. It did not make any effort to obtain his postal address in Ripley for the purpose of writing to him and requesting his presence at trial; nor did the State attempt to telephone the information operator in Ripley for the purpose of obtaining his phone number there so that his presence at trial could thereafter have been verbally requested. In addition, during this period the State made no effort to contact the law enforcement authorities in Ripley, Tennessee. Had such contact been made, Bradford's presence in Ripley could have been verified and the aid of the local authorities in securing his presence at trial could have been requested. We believe that the State should have made some effort to verify Bradford's presence in Ripley and, if he was found to be living there, to thereafter contact him and request his attendance at trial.

Bradford's preliminary hearing testimony should not have been admitted in evidence at trial because the State did not meet its burden of proving it made a good-faith, reasonably diligent effort to procure his attendance at trial. The total absence of any effort by the State to verify Bradford's presence in Ripley, Tennessee, and to contact him and request his attendance at trial after confirming his presence there constitutes reversible error.

■■ By finding a lack of due diligence in the State's efforts to procure Bradford's attendance at trial on the basis of the facts and circumstances of this case, we follow the accepted procedure for determining whether the "good-faith, reasonably diligent effort" requirement for the admission of preliminary hearing testimony is met. (See *Payne*.) Lest it be said that this method does not enable the State to predict in advance what will constitute a "good-faith, reasonably diligent effort," we add the following before considering the second issue on appeal: (1) mindful of the United States Supreme Court's decision in *Mancusi v. Stubbs* (1972), 408 U.S. 204, 33 L. Ed. 2d 293, 92 S. Ct. 2308, we would not require the State to make an effort to contact a witness that has moved to a foreign country if the State is powerless to compel his attendance at trial; (2) we would require the State to make an effort to contact a witness located within the United States, its territories and possessions, and to request his attendance at trial if the effort is successful, when it learns of his new location in sufficient time before trial to reasonably permit such an effort; and, (3) what will constitute a sufficient effort to contact out-of-State witnesses must be determined on a case-by-case basis just as what has constituted a sufficient effort to contact missing witnesses not discovered to be out of State has been determined in the past. See, *e.g., Payne*.

The second issue presented on appeal is whether defendant was proved guilty beyond a reasonable doubt. A conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful or uncertain. *E.g., People v. Guyton* (1972), 53 Ill. 2d 114, 117, 290 N.E.2d 209.

■■ The only evidence presented at trial for the purpose of establishing defendant's guilt consisted of Bradford's preliminary hearing testimony, and Woods' and Officer Pikowski's trial testimony.

Bradford first identified defendant almost two full years after the shooting and robbery occurred. At the preliminary hearing he again identified defendant as the man who had shot and robbed him on December 13, 1971. His identification at the hearing might have been sufficient to establish the defendant's guilt beyond a reasonable doubt in other circumstances. However, since we hold that Bradford's testimony should not have been admitted in evidence at trial, we must look elsewhere for evidence indicating guilt beyond a reasonable doubt.

Noble Woods was the other occurrence witness to the events which transpired in the early morning of December 13, 1971. The trial judge did not believe one single word of his identification testimony. On nine separate occasions during the trial the trial judge stated that he did not believe Woods' identification of the defendant as the offender. Since the trial judge did not find Woods' identification testimony credible, we see no reason to consider it in our deliberation on this issue.

Officer Pikowski testified at trial that he arrested defendant on December 10, 1973. After his arrest, defendant said he wanted to clear the whole thing up. Thereafter, in the presence of both defendant and Officer Pikowski, Bradford stated that he was positive that defendant was the man who shot and robbed him on December 13, 1971. It should be noted that Officer Pikowski's testimony was not offered for the purpose of proving an implied admission. He was not asked about the defendant's reaction when Bradford identified the defendant; nor does the record disclose what the defendant's reaction was. Thus, Bradford's out-of-court identification could only have been offered to bolster Bradford's preliminary hearing identification and to compensate for the trial judge's total disbelief of Woods' identification testimony.

We must disregard Bradford's preliminary hearing testimony because of our holding that it was reversible error to admit this testimony in evidence at trial, and we are compelled to ignore Woods' identification because the trial judge found it entirely lacking in credibility. The only remaining identification evidence is Officer Pikowski's corroborating testimony. We do not believe that this evidence is alone sufficient to establish the defendant's guilt beyond a reasonable doubt.

Because of the error in admitting Bradford's preliminary hearing testimony and the doubtful identification evidence we reverse.

Reversed.

LORENZ and MEJDA, JJ., concur.