THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL JACKSON, Defendant-Appellant.
First District (6th Division)   No. 1—89—1142

Opinion filed August 28, 1992.

Timothy M. Kelly, of Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Joseph Alesia, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:
Following a jury trial, defendant, Michael Jackson, was found guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and felony murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)). The trial judge imposed a term of natural life imprisonment for murder and a concurrent natural life term for armed robbery. The deceased, owner of a liquor store, was shot to death on the store premises following an armed robbery in which store employee, Rudolfo Ramirez, was also a

victim. (The convictions and sentences of codefendants Samuel Lee and L.C. Jackson have been affirmed for their participation in this offense, Lee in a Rule 23 order (*People v. Lee* (1st Dist. 1991), No. 88—2801), and L.C. Jackson also in a Rule 23 order (*People v. Jackson* (1st Dist. 1992), No. 89—0773). This court reversed and remanded the conviction of Michael Green in accordance with *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. *People v. Green* (1992), 228 Ill. App. 3d 849.)

On appeal, defendant contends that the trial court erred in denying his motion to suppress unreliable identification testimony and allowing the jury to consider irrelevant physical evidence and testimony, and that he was not proved guilty beyond a reasonable doubt.

Defendant filed a motion to suppress identification evidence offered by Ramirez due to the alleged suggestive nature of the identification procedure. At the hearing, Detective John Leonard of the Chicago police department testified that on February 27, 1987, he was assigned to investigate the homicide of the deceased which had occurred on February 5, 1987. Leonard asked Ramirez to come to the police station. Upon his arrival, Leonard and his partner, Jillian McLaughlin, told Ramirez that they had some photographs for him to look at to see if he could recognize anyone. Leonard then placed eight black and white photographs on the desk. Leonard did not inform Ramirez that any of the alleged suspects were among the eight photographs placed before him. Approximately one minute later, Ramirez picked out two photographs of the men who had entered the store, which later were identified as codefendant Green and defendant.

The photograph of defendant that Leonard displayed had the Illinois Department of Corrections sign below the face of defendant, while the other seven photographs had the Chicago police department sign. Leonard was unaware that he had a Chicago police department photograph of defendant in his possession; however, that picture of defendant was taken in 1977. Leonard recognized that the Chicago police department photographs were a different size than the other photograph, so he trimmed and punched holes on the top of the photograph so that all the pictures would be similar. Neither Leonard nor his partner made any suggestion as to which picture Ramirez should identify.

Ramirez testified at the hearing that the police telephoned him and asked him to come to the station to make an identification of the man who had murdered his partner. The detectives presented 8 to 10 black and white pictures, none of which he had ever previously seen. Ramirez immediately pointed out two photographs and memorized the

individuals' appearance. There was nothing about the way the pictures were cut or the holes punched into them, or anything written on them which affected his identification.

The trial judge found no evidence indicating that the photo identification of defendant was suggestive and denied the motion to suppress.

Defendant attempted to introduce into evidence an affidavit of his brother, L.C. Jackson. In that affidavit, L.C. Jackson stated that defendant was not with him when he participated in the armed robbery, nor did he have any knowledge of that crime. The trial judge refused to admit this evidence and also denied defendant's motion to exclude testimony concerning a gun and radio seen in the possession of L.C. Jackson.

The following testimony was adduced at trial. The deceased's wife, Caridad Hernandez, testified that she last saw the deceased when she arrived home from work at 4:30 p.m. on the day of the murder. The deceased then left to go to work at the liquor store. Later that evening, she was informed that something had happened at the liquor store. Hernandez identified her husband's body at the morgue that evening. Hernandez identified a radio marked with white paint stains and missing knobs as the one her husband kept in the store.

On the evening of the murder, Ramirez, Julio Sandoval and the deceased were working at the liquor store. Ramirez testified through an interpreter that at 8 p.m., four or five customers were present in the store. The last customer who exited the store walked out slowly looking toward the surveillance camera above the door. Sandoval left the store to make a customer delivery, and Ramirez went into the storage room located in the rear of the store.

The deceased activated the buzzer used to notify other employees that a customer had entered the store. Ramirez saw two men, later identified as codefendant Green and defendant, looking at a bottle on the shelf. The men removed a bottle from the shelf and approached the deceased at the cash register. The deceased informed Ramirez that the two men did not have enough money to pay for the bottle. Ramirez retrieved the bottle from the deceased and returned it to the shelf. The two men then decided to make another purchase. Ramirez stood approximately two feet away from defendant and Green. Ramirez made a positive in-court identification of defendant as one of the two men.

Suddenly Ramirez heard one of the men announce that it was a holdup. Defendant threatened to kill Ramirez if he moved. Ramirez

heard shots ring out, and the deceased was fatally shot in the neck with a .38 caliber gun.

Ramirez dropped to the floor. Although he had a gun, he was unable to get it out of his pocket to defend himself. Defendant then ordered Ramirez to open the cash register. As he did so Ramirez saw the man wearing a dark hat behind the counter holding a gun with a small barrel. Defendant held a gun that appeared to be a .357 magnum. After opening the register, Ramirez hit the floor again and heard a voice say, "If he looks up, kill him." After the men left the store, Ramirez noticed that the television set and radio kept in the store were missing.

Two weeks after the murder, Ramirez identified defendant from a photographic array as the man who held a gun to his head, and later identified Green as the man who wore the dark hat. Ramirez also identified the gun that defendant held to his head.

On cross-examination, Ramirez testified that he recalled speaking with two detectives at the store following the attack, but he did not remember telling them that three black males burst into the store and immediately shot the deceased. Ramirez did not see who shot the deceased, but he saw defendant "very well." According to Ramirez, only one to three minutes elapsed from the time the man who bought the beer left the store until defendant and Green entered.

Patricia Grissom testified for the State that on February 8, 1987, she spoke with the police about the 1974 Oldsmobile she had borrowed from her brother. On the evening of February 5 she allowed Lawrence Brantley, Green, L.C. Jackson, Sammy Lee and defendant to use the car to go to the store. Grissom gave the keys to Brantley, and all five men returned approximately one hour later.

Later that evening, Grissom accompanied Brantley to his sister's apartment. Over defense objection, Grissom testified that she overheard Lee, Green and L.C. Jackson argue about "splitting up money." In her grand jury testimony, Grissom stated that defendant had participated in this argument as well.

Officer Michael Cronin testified for the State that he executed a search warrant for a gun on February 11, 1987, at the apartment of Lillian LeFlore. He recovered a pellet gun wrapped in a towel. LeFlore testified that the gun was given to her by L.C. Jackson two days earlier on February 9.

Andre Coleman testified for the State that the police recovered a radio from his apartment on February 18, 1987. Coleman had purchased the radio from L.C. Jackson for two bags of cocaine and $15. Coleman further testified that L.C. Jackson returned a week or two

later to sell him a .38 caliber gun, which Coleman took in exchange for another $15 and two bags of cocaine.

Dr. Barry Lifschultz, who performed the autopsy, opined that the deceased died as a result of a gunshot wound to the neck. The parties stipulated that Richard Chenow of the Chicago police crime laboratory would testify that a .38 caliber bullet was taken from the neck of the deceased.

Chicago police detective Mark Sanders testified for defendant that he spoke with Ramirez at the liquor store immediately after the crimes. Ramirez told him that three black males entered the store "very fast," fired one shot, and forced him to the floor. Sanders interviewed Ramirez approximately 10 days later, and he repeated his first account of the incident.

The jury returned a verdict of not guilty as to the charge of murder, but guilty of two counts of armed robbery and one count of felony murder. Pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 et seq.), defendant was sentenced to natural life in prison.

On appeal, defendant first asserts that the trial court erred in denying his motion to suppress unreliable identification testimony. Defendant contends that Ramirez's identification of him was unreliable, since he had less than one minute to view the robbers, who entered the store "very fast," and immediately forced him to the floor. Defendant also points out that Ramirez did not have an opportunity to view the photographs until three weeks after the murder, and that because the "Illinois Department of Corrections" photograph in which defendant was depicted differed from the "Chicago Police Department" photographs, the identification array was impermissibly suggestive.

The prosecution has the burden of proving beyond reasonable doubt the identity of the person who committed the crime. (Ill. Rev. Stat. 1987, ch. 38, par. 3—1.) An identification will not be deemed sufficient to support a conviction if it is vague or doubtful. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153; *People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 502.) A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.

█ In *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, the Supreme Court enumerated the following circumstances to be considered in evaluating an identification: (1) the oppor-

tunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317; *People v. Cohoon* (1984), 104 Ill. 2d 295, 472 N.E.2d 403.

■ Applying these principles to the present case, we find that the trial court properly allowed Ramirez's identification testimony into evidence. Ramirez testified that on the night of the murder he saw Green and defendant enter the liquor store and look at merchandise on the shelf. Ramirez stood only two feet away from the pair when they announced the hold-up. Defendant held a gun to Ramirez and threatened to kill him if he moved. Ramirez saw that Green wore a dark hat and carried a small gun, while defendant held a large gun that appeared to resemble a .357 magnum. Defendant and Green then ordered Ramirez to open the cash register. Thus, Ramirez had ample opportunity to view defendant during the commission of the crime, and his degree of attention was sufficiently heightened to provide a credible identification.

We note as well that Ramirez was able to immediately identify defendant from the photographic array that the police displayed to him three weeks after the crime occurred. We are unpersuaded by defendant's assertion that the identification process was unduly prejudicial to him simply because defendant's photograph displayed an Illinois Department of Corrections sign instead of the Chicago police department sign that was present on the other photographs. In an effort to minimize this dissimilarity, Officer Leonard trimmed the photographs and punched holes on top. Leonard testified that neither he nor his partner made any suggestion as to which picture Ramirez should identify. Ramirez also testified that there was nothing about the way the pictures were cut or displayed that affected his identification of defendant and Green. Accordingly, we find that the trial judge correctly ruled that the photo identification of defendant was not suggestive, and thus the motion to suppress was properly denied.

■ Defendant next contends that L.C. Jackson's affidavit should have been admitted into evidence because its character falls within the purview of a statement against penal interest. The general rule is that a third party's extrajudicial declarations, not made under oath, that he committed a crime are purely hearsay and are inadmissible, even though they are declarations against interest. (*People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470.) The Supreme Court has relied

upon the following four objective indicia of trustworthiness in holding that declarations against penal interest may be admissible: (1) the statement was spontaneous and occurred shortly after the crime; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and a declaration against interest; and (4) there was an adequate opportunity for cross-examination of the declarant. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.) In this case, L.C. Jackson's affidavit was produced almost one year after the crime; was not made under oath; and was not corroborated by other evidence. As such, the affidavit was properly excluded.

Defendant also contends that the trial court erred by allowing the jury to consider irrelevant physical evidence and prejudicial hearsay testimony. Specifically, defendant complains that the State's introduction of evidence concerning L.C. Jackson's possession of the radio, the pellet gun and the .38 caliber pistol after the armed robbery was irrelevant and prejudicial to him.

■ It is well established that under the coconspirator's exception to the hearsay rule, the acts and declarations of a coconspirator made in furtherance of the conspiracy are admissible against a defendant even when made out of the defendant's presence. (*People v. Saldana* (1986), 146 Ill. App. 3d 328, 496 N.E.2d 757; *People v. Simpson* (1976), 39 Ill. App. 3d 318, 349 N.E.2d 441.) In order to avail itself of the exception, the State is required to establish a *prima facie* case by independent evidence that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach another end by criminal means. *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.

■ In the present case, we do not find that the trial court erred in allowing the gun or radio found in L.C. Jackson's possession into evidence. The evidence concerning the theft of the radio offered by the deceased's wife and Ramirez effectively tied the other codefendants and defendant to the armed robbery. Coleman testified that L.C. Jackson sold him the radio and a .38 caliber gun following the murder each for $15 and two bags of cocaine. Dr. Lifschultz opined that the deceased died of a gunshot wound to the neck. The ballistics evidence stipulated to by the parties indicated that a .38 caliber bullet was taken from the neck of the deceased. As such, the State met its burden in establishing a *prima facie* case by presenting sufficient independent evidence to support its admission into evidence.

■ Defendant further maintains that Grissom was permitted to testify that Lee, Green, and L.C. Jackson were arguing about how

they were going to "split the money up" and that these hearsay statements were offered as substantive proof that those who participated in the conversation also participated in the crime. Grissom's grand jury testimony also included defendant as a participant in that conversation. Defendant cites *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734, as support for his contention that a statement must be made or adopted by defendant to be introduced as an admission in a criminal trial.

We agree with defendant that such hearsay testimony was improperly admitted. However, we do not find that it rises to the level of reversible error because it deprived defendant of a fair trial. Initially, we note that in Grissom's trial testimony, she did not identify defendant as a participant in the conversation nor was the statement directly attributed to him. Moreover, any error involved in the admission of hearsay testimony is harmless where the testimony is merely cumulative or is supported by positive identification and other corroborative circumstances. *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132; *People v. Mosley* (1979), 71 Ill. App. 3d 808, 390 N.E.2d 364.

In this case, Ramirez positively identified defendant as one of the attackers in the photographic array and also made an in-court identification. Grissom testified that she lent the car to Lee, L.C. Jackson, Brantley, Green and defendant on the night of the crime and that they returned approximately one hour later. Testimony was also introduced concerning the radio taken and the weapons used in the course of the offense. Thus, we believe that sufficient corroborating evidence was introduced to offset any potential error that may have been made by the improper hearsay testimony.

■ Finally, defendant asserts that he was not proved guilty beyond a reasonable doubt. In particular, defendant claims that the State failed to present clear identification testimony, and that the circumstantial evidence presented did not lead to a reasonable and moral certainty that the accused and no one else committed the crime.

The critical inquiry on review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) Once defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that, upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution. (*People v. Mig-*

*liore* (1988), 170 Ill. App. 3d 581, 525 N.E.2d 182.) Upon close review of the record, we find that the State presented sufficient evidence through the positive identification made by Ramirez and other relevant circumstantial evidence to support the jury's determination.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI,* J., concur.

---

*Justice Rosemary LaPorta participated in oral argument prior to her death. Justice Thomas R. Rakowski was substituted on the panel and has listened to the oral argument tape and has read the briefs.