THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY SMITH, Defendant-Appellant.

First District (3rd Division)    No. 1—93—1506

Opinion filed September 13, 1995.—Modified opinion filed September 27, 1995.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Timothy Felgenhauer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Tony Smith, was convicted of one count of armed robbery (720 ILCS 5/18—2(a) (West 1992)), two counts of aggravated battery (720 ILCS 5/12—4(B)(1) (West 1992)), and three counts of home invasion (720 ILCS 5/12—11(A)(1) (West 1992)). He was subsequently sentenced to 30 years' imprisonment. On appeal, defendant asserts that (1) his armed robbery conviction violated

double jeopardy because the trial court had directed an acquittal on that charge; (2) two of his home invasion convictions must be vacated because only one home invasion occurs as a result of one unauthorized entry; (3) the trial court erred by finding that Lowell Tuff, one of the victims, was unavailable to testify; (4) the testimony of the State's rebuttal witnesses violated the hearsay rule and his right to confrontation; and (5) his due process rights were violated when the State misstated the facts and shifted the burden of proof onto him during closing arguments. For the following reasons, we affirm in part, vacate in part, and remand for resentencing.

Rodney Burton and Chris Spann both testified that on Sunday, November 3, 1991, they were at Lowell Tuff's apartment at 1158 N. Cleveland Street, apartment 305, in Chicago. The three men had smoked crack cocaine from Friday night until Saturday night. Between 2 and 2:30 p.m. Sunday afternoon, they were sitting in the living room listening to the radio when there was a knock on the door. Tuff answered the door and four or five men rushed in, some with guns pointed, and told the three victims to lie on the floor. Both Burton and Spann identified defendant as one of the attackers who was carrying a gun.

The attackers threatened to kill the three victims if they did not tell them where the drugs and money were. While defendant and other attackers beat the three victims with a stick and kicked them repeatedly, other attackers searched the apartment looking for drugs and money.

When no drugs or money was found, the attackers told the victims to take off their clothes, which were then searched. While the victims were unclothed, the attackers heated a metal ice chopper on the stove and burned the backs of Burton and Spann, then beat them with a wooden stick.

About 45 minutes into the attack, defendant and several other attackers took Tuff from the apartment. Burton and Spann could hear Tuff's screams from the apartment next door. A few minutes later, defendant and Tuff returned to Tuff's apartment. The beatings against Burton and Spann resumed while Tuff got dressed.

Eventually, Tuff was able to escape. As most of the attackers chased him, Burton and Spann heard gunshots in the hallway. When the attackers returned to the apartment, they resumed beating Burton and Spann. About 15 to 20 minutes later, one of the attackers saw the police coming, so they all ran away. Burton and Spann locked the door until the police arrived at the apartment. After they dressed, they were taken to Grant Hospital and released the same day.

Chicago police officer Porter Goosby testified that he was stopped

by a man on the street at 5:15 p.m. on November 3, 1991. As a result of the conversation with the man, Goosby went to 1158 North Cleveland Street, apartment 305, where he found Burton and Spann in the ransacked apartment. Burton and Spann both had visible bruises and injuries on their bodies.

Chicago police officer Edward King testified that he arrested defendant on November 8, 1991. During his investigation, King went to 1158 North Cleveland Street, apartment 305, where he recovered a metal ice chopper/hoe with a wooden handle. The next day, King took Burton to the police station to have his injuries photographed.

Louis Schubrych and Kenneth Harris, investigators for the Cook County sheriff's police, testified that they attempted to personally serve Tuff with a subpoena. On October 7, 1992, Schubrych left a subpoena at 9327 South Wallace Street in Chicago, where there was no answer. On December 28, 1992, Harris left a subpoena at that same address. Schubrych then unsuccessfully tried to serve Tuff on December 29, 1992, at 1158 North Cleveland Street, apartment 305. There, Schubrych spoke with the security personnel in an effort to locate Tuff, but was unsuccessful.

At the close of the day's evidence, the trial court told the State in a sidebar that it did not have to formally rest until the next day, but that for judicial economy and time management, defendant's motion for a directed verdict would be heard. After the trial court granted defendant's motion on several counts, court was adjourned for the day.

The next morning, the State asked that Tuff be found unavailable to testify. The assistant State's Attorney explained that additional attempts had been made to locate Tuff: the Cook County jail and the morgue were checked and Detective Kill was asked to look for him.

After the trial court found Tuff unavailable, the transcript of his November 12, 1991, preliminary hearing testimony was read. Defendant objected on the basis that there had already been a directed verdict on his armed robbery charge. The trial court explained, however, that the verdict had not been directed and that the proceedings that occurred on the previous day were for time management purposes only.

At the preliminary hearing, Tuff had testified under oath that he was at his apartment at 1158 North Cleveland Street, apartment 305, with Burton and Spann on November 3, 1991. When Tuff answered a knock on his door, defendant, whom he had known by sight for nearly two years, forced his way into the apartment with the other attackers. Defendant was holding a gun. The attackers

ordered Tuff, Burton, and Spann to lie on the floor and demanded to know where the drugs and money were. Defendant ordered the victims to undress while the other attackers searched the apartment for money and drugs.

After defendant asked who in the building sold drugs and Tuff replied that a man upstairs sold drugs in the past, defendant took Tuff out of the apartment. When they returned, defendant continued to beat the three victims. One of the attackers took a metal ice chopper from the closet, heated the metal part on the stove, and burned the backs of Burton and Spann.

While Tuff was putting his pants back on, he was able to run out the door. Before leaving, he noticed that one of the attackers had a digital clock radio and an iron. Tuff stated that he did not give any of the attackers permission to enter his apartment or take any of his belongings.

After the State rested, the transcript of Tuff's September 17, 1992, bond hearing was read during defendant's case in chief. At that hearing, Tuff stated under oath that he identified defendant at the police station from a distance of 50 to 60 feet away and again identified him at the preliminary hearing without looking at him. Tuff testified that he looked only at the left side of defendant's face because defendant did not look at him.

According to Tuff, he knew that his attacker's name was Tony, but the police officers gave him the last name of Smith. Tuff further testified that his attacker had a scar on the right side of his face whereas defendant had no such scar. After the court hearing in November 1991, Tuff realized that he had identified the wrong man because he saw his attacker several times on the street. Tuff stated that he told the police of the wrong identification and asked about the procedure to inform the court. He also told an assistant State's Attorney, who responded that he would have to check Tuff's story to make sure that he was not being harassed or threatened.

In the State's rebuttal, Officer Goosby testified that Tuff told him on November 3, 1991, that the names of the attackers were Tony Smith or Tony Brown and Prentice Smith. Officers Bronkema and Gray testified that Tuff was 10 to 15 feet from defendant when he identified him in the police station.

In defendant's surrebuttal, a statement Tuff made to assistant public defenders James Saltouros and Frank Astrella on September 11, 1992, was published to the jury. In that interview, which was not under oath, Tuff stated that he believed that defendant was the wrong person. He explained that he identified defendant in the police station after he glanced at him from 50 to 60 feet away; he was able to

see only the left side of defendant's face at the preliminary hearing; and he saw his attacker; who had a scar on the right side of his face, while defendant was incarcerated.

Following deliberations, the jury returned a guilty verdict on one count of armed robbery, two counts of aggravated battery, and three counts of home invasion. Subsequently, defendant was sentenced to 30 years' imprisonment.

On appeal, defendant asserts that his conviction for armed robbery violated double jeopardy principles because the trial court had directed a verdict on that charge, then reinstated the charge the next day, and allowed the jury to reach a verdict on the charge. At issue is whether the trial court directed a verdict on the armed robbery charge when it heard defendant's motion for a directed verdict before the State rested its case in chief.

In a sidebar, the trial court had asked the State whether it was resting. The prosecutors responded that their witnesses were done, but that they had evidence to admit. After a discussion, the State informed the court that it did not want to rest until the next day since there was an issue of a missing witness that they wanted to argue.

The trial court stated as follows:

"You won't have to formally rest, and so if anything develops overnight that, you know, and then first thing tomorrow you can rest. *** Why don't we let the jury go and then, and in anticipating resting first thing, you can argue your motion [for a directed verdict] today after the jury leaves."

After the jury was excused, the court stated:

"At this time, the defense has indicated that they wish to bring their motion for directed finding, working on the assumption that the State will rest tomorrow morning; if not something clearly develops that you wish additional evidence, that can be done tomorrow. All right. And in anticipation of that not happening, I will allow the defense to argue that now, time management considerations."

Defendant did not object to that procedure. After argument, the trial court stated that it was granting the motion for a directed verdict on seven counts, including armed robbery.

The next morning, the State indicated that it was not resting and that it had made additional efforts to locate Tuff, then asked for a finding that Tuff was unavailable and for admission of his preliminary hearing transcript into evidence. The trial court granted the State's request over defense objections and motions for a mistrial. Tuff's preliminary hearing testimony was then read to the jury.

Numerous times, the court offered to have defendant reargue his motion for a directed verdict after the State rested, but defendant declined. Following deliberations, the jury found defendant guilty of six counts, including the armed robbery charge.

Defendant argues that the trial court cannot grant a directed verdict on a contingent basis just as it cannot reserve a ruling on a motion for a directed verdict. (See *People v. Rascher* (1992), 223 Ill. App. 3d 847, 855, 585 N.E.2d 1153.) To support his argument, defendant relies on cases where convictions were reversed because the trial court granted a directed verdict of not guilty only to later vacate that order and reinstate the charges. See *People v. Brown* (1992), 227 Ill. App. 3d 795, 592 N.E.2d 342 (the trial court unequivocally granted defendant's motion for a directed verdict on the armed violence count); *People v. Stout* (1982), 108 Ill. App. 3d 96, 438 N.E.2d 952 (the trial judge entered a directed verdict in defendant's favor, but later granted the State's motion for reconsideration and withdrew the directed verdict); *People v. Strong* (1984), 129 Ill. App. 3d 427, 472 N.E.2d 1152 (the trial court reconsidered the directed verdict it had granted on the previous day, rescinded its previous order because it had been erroneously granted, and submitted the home invasion charge to the jury); *People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115 (the trial court reconsidered and vacated its oral order granting the defendant's directed verdict motion); *Rascher*, 223 Ill. App. 3d 847, 585 N.E.2d 1153 (the trial court reserved ruling on the directed verdict motion, then denied it after the jury found the defendant guilty).

■ While a directed finding is an acquittal and double jeopardy prevents the trial judge from reconsidering the ruling and reinstating the charge (*Brown*, 227 Ill. App. 3d at 796-99), that is not what occurred in this case. The trial court did not grant the directed verdict then reconsider, rescind, withdraw, or vacate its ruling, which would have been an acquittal. *Stout*, 108 Ill. App. 3d at 98-99.

The record is clear that the State did not rest before defendant argued his motion for a directed verdict. The trial court stated that it was hearing the motion for time management reasons and explained the procedure several times. Not only did defendant fail to object to the procedure, but the court gave him numerous opportunities to reargue his motion for a directed verdict, which he declined. As a result, we conclude that the trial court did not direct a finding of acquittal on the armed robbery charge and double jeopardy principles were not violated.

Next, defendant asserts, and the State concedes, that two of the home invasion counts must be vacated because only one count of

home invasion occurs as a result of one unauthorized entry of a dwelling regardless of the number of persons present or harmed. (*People v. Brown* (1990), 197 Ill. App. 3d 907, 919, 557 N.E.2d 199; *People v. Criss* (1988), 169 Ill. App. 3d 926, 931-32, 523 N.E.2d 1135; Ill. Rev. Stat. 1985, ch. 38, par. 12—11 (now 720 ILCS 5/12—11 (West 1992)).) As a consequence, defendant argues that the case must be remanded for resentencing because a single sentence was imposed on all counts, but the State contends that this case need not be remanded for resentencing because the trial court was clearly aware that there was only one home invasion conviction, not three. The State bases its argument on the principle that the trial court is presumed to understand the law and properly apply it. *People v. Harris* (1974), 57 Ill. 2d 228, 231, 314 N.E.2d 465; *People v. Stewart* (1989), 186 Ill. App. 3d 833, 840, 542 N.E.2d 915.

■ Because we find that the record rebuts the presumption, two counts of home invasion must be vacated and the cause remanded for resentencing. When the State requested consecutive sentences totalling 90 years for the "home invasion counts on each victim," the following discussion ensued:

"THE COURT: So the record's straight, isn't [*sic*] there two findings of aggravated battery?

[THE STATE]: Two findings of aggravated battery, three findings of home invasion, Judge.

THE COURT: Just one second.

[THE STATE]: Count 5, 6 and 7 on the home invasion.

THE COURT: One second. That is correct. The Court sheets, I have count 7 as residential burglary. It is in fact home invasion."

Thus, it is clear that the judge considered three home invasion convictions when sentencing defendant. Moreover, the order of sentence and commitment shows a single sentence of 30 years' imprisonment based on one count of armed robbery and three counts of home invasion. Therefore, two counts of home invasion must be vacated and the case is remanded for resentencing.

Defendant then asserts that the admission of Lowell Tuff's preliminary hearing testimony violated his right to confrontation and the rule against hearsay because the State did not meet its burden of showing that Tuff was unavailable to testify and that his testimony was reliable.

The sixth amendment to the United States Constitution provides that all defendants have the right to be confronted with the witnesses against them. (*Ohio v. Roberts* (1980), 448 U.S. 56, 62, 65 L. Ed. 2d 597, 605, 100 S. Ct. 2531, 2537.) When a hearsay declarant is not present for cross-examination at trial, the confrontation clause

requires a showing that he is unavailable and that his statement bears adequate indicia of reliability. *Ohio v. Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2538-39.

To show that a witness is unavailable, the prosecution must make a good-faith effort to obtain his presence at trial. (*Ohio v. Roberts*, 448 U.S. at 74, 65 L. Ed. 2d at 613, 100 S. Ct. at 2543; *Barber v Page* (1968), 390 U.S. 719, 724-25, 20 L. Ed. 2d 255, 260, 88 S. Ct. 1318, 1322.) The lengths to which the prosecution must go to produce a witness is a question of reasonableness and does not include futile acts. (*Ohio v. Roberts*, 448 U.S. at 74, 65 L. Ed. 2d at 613, 100 S. Ct. at 2543.) The ultimate question is whether the witness is unavailable despite the good-faith efforts undertaken prior to trial to locate and present that witness. *Ohio v. Roberts*, 448 U.S. at 74, 65 L. Ed. 2d at 613, 100 S. Ct. at 2543.

Whether good-faith and reasonable diligence have been exercised is determined on a case-by-case basis after a careful review of the facts and circumstances. (*People v. Brown* (1977), 47 Ill. App. 3d 616, 621, 365 N.E.2d 15.) The State has the burden of proving that the steps it took to secure the presence of a missing witness at trial were made in good faith and were reasonable under the circumstances. *Ohio v. Roberts*, 448 U.S. at 75, 65 L. Ed. 2d at 613, 100 S. Ct. at 2543; *Brown*, 47 Ill. App. 3d at 621; *People v. Payne* (1975), 30 Ill. App. 3d 624, 630, 332 N.E.2d 745.

The record shows that the State made a good-faith effort to find Tuff. Prior to trial, Investigators Schubrych and Harris tried to serve subpoenas on Tuff on three occasions at two different addresses, called the public aid office, and spoke with security at his former apartment building to ascertain his whereabouts. During the trial, the State made additional efforts to find Tuff by contacting the Cook County jail and morgue and asking Detective Kill to look for Tuff.

The difference between the cases that defendant cites to support his argument (see *People v. Holman* (1924), 313 Ill. 33, 144 N.E. 313; *People v. Rogers* (1979), 79 Ill. App. 3d 745, 398 N.E.2d 1058; *Brown*, 47 Ill. App. 3d 616, 365 N.E.2d 15; *Payne*, 30 Ill. App. 3d 624, 332 N.E.2d 745) and this case is that, in those cases, where there was no good-faith effort or due diligence, further investigative avenues could have been taken. Whereas, here, the State had no leads to follow in locating Tuff. There were no investigative leads that the investigators failed to check. As a result, we find that there was a good-faith effort to locate Tuff.

In addition to showing that Tuff was unavailable, the confrontation clause requires a showing that his statement bore adequate

indicia of reliability, which can be inferred if the evidence falls within a firmly rooted hearsay exception. (*Ohio v. Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2538-39.) If, however, the evidence does not fall within a firmly rooted hearsay exception, it must have particularized guarantees of trustworthiness. *Ohio v. Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

There has traditionally been an exception to the confrontation requirement for a witness who is unavailable, has testified against the same defendant at a previous judicial proceeding, and was subject to cross-examination by that defendant. (*Barber v. Page*, 390 U.S. at 722, 20 L. Ed. 2d at 258, 88 S. Ct. at 1320; *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121; *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116.) Where there was an adequate opportunity to cross-examine the witness at the preliminary hearing and defense counsel availed himself of that opportunity, the transcript bears sufficient indicia of reliability and affords the trier of fact a satisfactory basis for evaluating the truth of the prior statement. (*Ohio v. Roberts*, 448 U.S. at 73, 65 L. Ed. 2d at 612, 100 S. Ct. at 2542-43.) In determining whether an adequate opportunity to cross-examine the witness has been afforded defendant, the courts have considered: (1) whether any undue restrictions were placed on the defendant's right to cross-examine the witness; (2) the length and extent of cross-examination; (3) whether the same evidence would be covered by other witnesses; and (4) whether discrepancies in the witnesses' testimony pertained to material issues. *People v. Kite* (1981), 97 Ill. App. 3d 817, 823-24, 423 N.E.2d 524; *People v. Sutton* (1994), 260 Ill. App. 3d 949, 958, 631 N.E.2d 1326.

Defendant argues that Tuff's preliminary hearing testimony was not reliable because he later recanted that testimony at his bond hearing under oath and in a tape-recorded interview with defense counsel. We disagree.

■ Even though Tuff recanted his preliminary hearing testimony, his prior testimony was made under oath and defendant had the opportunity to, and in fact did, cross-examine him. Furthermore, defendant presented Tuff's bond hearing testimony, which was also made under oath, and his statement to the defense attorneys, which was not made under oath. And so, the jury heard the recantations and could judge the testimony for themselves. For that reason, there was no error in allowing Tuff's preliminary hearing testimony to be heard by the jury.

■ Next, defendant asserts that the admission of Tuff's statements to police officers Goosby and Gray during the State's rebuttal violated his right to confrontation and the rule against hearsay

because the State did not show that Tuff was unavailable or that his statements were reliable. Defendant contends that the entire rebuttal evidence was improper as a product of the error in allowing Tuff's preliminary hearing testimony. We find the rebuttal evidence to be harmless error.

The final issue is whether the State's closing argument comments prejudiced defendant. After considering the closing argument in its entirety, the context of the language used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial (*People v. Hudson* (1993), 157 Ill. 2d 401, 440, 626 N.E.2d 161; *People v. Linscott* (1991), 142 Ill. 2d 22, 38, 566 N.E.2d 1355), we conclude that any improper remarks made by the State were harmless error.

Based on the foregoing reasons, we affirm defendant's conviction for armed robbery and one count of home invasion, vacate two of his convictions for home invasion, and remand the cause for resentencing.

Affirmed in part; vacated in part; and remanded in part.

GREIMAN, P.J., and RIZZI, J., concur.