No. 3--00--0937

_________________________________________________________________

    IN THE

                   APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                           A.D., 2002

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 10th Judicial Circuit,

       )  Peoria County, Illinois

Plaintiff-Appellee,       )

                                )

v.                         )  No. 99--CF--752

  )

DAVID DENTON,                   )  Honorable

  )  Donald C. Courson,

Defendant-Appellant.       )  Judge Presiding

________________________________________________________________

     JUSTICE HOMER delivered the Opinion of the Court:            

________________________________________________________________

A jury convicted defendant David Denton of two counts of home invasion (720 ILCS 5/12--11(a)(1),(2) (West 1998)) and one count of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 1998)).  Defendant was sentenced to 35 years in prison--
25 years for the two home invasion convictions to be served consecutively to a 10-year term for aggravated battery with a firearm.  Defendant appeals, contending that (1) the court erred in denying his motion to suppress identification testimony; (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (3) Public Act 86--980 (Pub. Act 86--980, eff. July 1, 1990), which created the offense of aggravated battery with a firearm, violates the single subject clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)); and (4) one of his convictions for home invasion must be vacated under one-act, one-crime principles.  We affirm in part, vacate in part and remand for a new sentencing hearing.

FACTS

Defendant and codefendant Clifford E. Graves were jointly indicted for offenses arising out of an August 6, 1999, unauthorized entry into the Peoria residence of Charles Woods and the shooting of Melvin Rogers within the residence.  Alleging that a photo lineup procedure was unnecessarily suggestive, defendant moved to suppress identification testimony.  

At the hearing on the motion, Peoria police detective Lisa Snow testified that on August 7, 1999, she was ordered to conduct photo lineups to identify possible suspects arrested in connection with the incident at Woods' home.  Snow said she first called up computerized mug shots of defendant and Graves.  She noted defendant's skin tone and distinctive "milky" eye and searched for mug shots of other young males with similar features.  After selecting photos of five individuals with facial characteristics generally comparable to each defendant, she prepared two six-photo arrays--one containing the mug shot of defendant, and the other containing a mug shot of Graves.

Snow took the photo arrays to Rogers' room in the intensive care unit of St. Francis Hospital that afternoon.  Rogers' friend, Lynette White, was visiting when Snow arrived.  White moved away from the bedside during the lineup procedure.  Rogers' hands were bandaged, and Snow asked if he could write.  Rogers said he could not, having been shot in both hands and in the groin.  Snow did not inquire about medications Rogers may have been on at the time of the lineups; however, she noted that he seemed alert and willing to view them.  Rogers immediately identified defendant and Graves from the photo arrays as the perpetrators.  According to Snow, Rogers said defendant was the person who came in with a gun and told the other person to "pop" Rogers when Rogers grabbed defendant's gun.  Rogers told her that Graves was the one who shot him while he was struggling with defendant for control of the gun.

Rogers testified that he was shot nine times from his knees to his arms as he was about to leave Woods' house after a social visit in the early morning of August 6, 1999.  Rogers did not recall describing the perpetrators to the police before he was taken to the hospital, but he did remember identifying them from the photo arrays shown to him after he recovered from surgery.  He said he believed that there was pain medication in the intravenous tube when Officer Snow showed him the photos, but he had no trouble making the identifications.

Rogers said he had seen both men in the neighborhood previously, but he did not know their names.  He said he had heard that defendant's nickname was "Nod," and Graves' nickname was "Snake."  He recognized defendant by his "dead" eye and Graves by his long hair.  Rogers said he pulled a nylon stocking mask off of "Nod" when he grabbed the gun and struggled with him. "Snake" then pulled off his own nylon stocking mask and began shooting Rogers.  Rogers said defendant's gun discharged once during the struggle before the two men ran out of the house.  Rogers identified defendant and Graves in person at the hearing.  Rogers also said that he had heard that there was a third individual involved in the incident, but only two had entered the house.

Following arguments of counsel, the trial court denied defendant's motion to suppress.  The court found that (1) Rogers had ample opportunity to view the perpetrators of the offense, (2) there was no evidence that anyone suggested which mug shot Rogers should select from the photo arrays, (3) the circumstances of Rogers' hospitalization justified the use of photo lineups, and (4) the lineups contained individuals of sufficiently similar features.  

At defendant's jury trial, the State first introduced Peoria police officer Dennis Maher, who testified that he was dispatched to Woods' house in the early morning of August 6, 1999.  At the time, Rogers was being treated by paramedics.  Maher asked if Rogers knew who shot him and Rogers said he did not.  Rogers and Snow then testified substantially the same as they had at the suppression hearing.

Charles Woods testified that Rogers told him to get out of the house when two men broke in through Woods' front door.  Woods ran out the back door and observed an unoccupied blue Grand Prix with the motor running blocking his driveway.  That evening, he saw the same car.  Woods telephoned the police and tried to follow the car.  By the time he next saw it, the police had pulled it over and arrested Graves and defendant.

Officer Todd Rusk testified that when he first saw the blue Grand Prix on the evening of August 6, the driver, Graves, was its only occupant.  Graves pulled over to a group of people standing by the curb, one of whom was defendant.  Rusk saw defendant enter the passenger side of Graves' car and then, when Rusk pulled up, both defendant and Graves got out.  After placing the two men under arrest, Rusk looked inside the vehicle and observed a semiautomatic handgun lying on the back seat.

Forensic testimony established that a fingerprint on the handgun matched defendant's little finger on his left hand.  Also, expert testimony established that a spent bullet recovered from the living room floor of Woods' house had been fired by the same gun.

Following their deliberations, the jury found defendant guilty of two counts of home invasion and one count of aggravated battery with a firearm, as charged.  Defendant was sentenced as aforesaid, and he appeals.

ISSUES AND ANALYSIS

1.  Motion to Suppress Identification

On appeal, defendant first argues that the court erred in denying his motion to suppress identification testimony because the photo lineup procedure used to make the identification was impermissibly suggestive.  Defendant contends that his was the only mug shot depicting a distinctive eye defect, and the photo array procedure tainted Rogers' in-court identification testimony.

On a motion to suppress, the defendant bears the initial burden of establishing that, within the totality of the circumstances, the pretrial identification was so unnecessarily suggestive that it gave rise to a substantial likelihood of an unreliable identification.  
People v. Simpson
, 172 Ill. 2d 117, 665 N.E.2d 1228 (1996).  Individuals selected for a photo array lineup need not be physically identical.  
Simpson
, 172 Ill. 2d 117, 665 N.E.2d 1228.  Differences in their appearance go to the weight of the identification, not to its admissibility.  
People v. Kelley
, 304 Ill. App. 3d 628, 710 N.E.2d 163 (1999).  Factors relevant to a determination of the reliability of a lineup include (1) the witness' opportunity to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4)  the level of certainty demonstrated at the time of the lineup; (5) the length of time between the crime and the lineup; and (6) any acquaintance with the suspect prior to the crime.  
Neil v. Biggers
, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).  These factors are to be weighed against the alleged corrupting circumstances of the identification procedure.  
Kelley
, 304 Ill. App. 3d 628, 710 N.E.2d 163.  The trial court's ruling on a suppression motion will not be overturned on review unless it is manifestly erroneous.  
People v. Melock
, 149 Ill. 2d 423, 599 N.E.2d 941 (1992).

Based on our careful review of the record in this case, we reject defendant's contention that the photo lineup was impermissibly suggestive or that Rogers' in-court identification testimony was tainted.  The individuals whose mug shots were included in the photo array all had generally similar physical features.  Several appeared to have some sort of an eye defect.  Although defendant was the only person who appeared to have one "dead," or "milky" eye, this distinguishing characteristic did not, in itself, render the photo lineup impermissibly suggestive. 

Further, as the trial court properly noted, the circumstances of the offense and Rogers' August 7, 1999, identification of defendant demonstrated that the identification was reliable.  Rogers had a clear view of the suspect's features upon removing his mask and while wrestling with him for control of the gun.  Rogers made the identification only one day after the offense.  He consistently stated that he recognized the perpetrator as a person known on the streets as "Nod," but that he was not personally acquainted with "Nod" and did not know his true name.  Finally, although Rogers was receiving pain medication when he viewed the photo array, there was no indication that the medication impaired his ability to see or communicate.  Accordingly, the trial court did not err in denying defendant's suppression motion.

2.  Sufficiency of Evidence at Trial

Next, defendant argues that the State failed at trial to prove beyond a reasonable doubt that he was a perpetrator of the crime.  Building on his premise that Rogers' identification testimony was unreliable, defendant contends that the State showed that defendant was with Graves when they were arrested, but failed to prove that he was present when Graves invaded Woods' home and shot Rogers.

The positive identification of the defendant by a single witness who had ample opportunity to observe him is sufficient to support a conviction.  
People v. Vriner
, 74 Ill. 2d 329, 385 N.E.2d 671 (1978).  Once a defendant has been found guilty of the crimes charged, the fact-finder's role as weigher of the evidence is preserved through a legal conclusion that, upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution.  
People v. Jackson
, 234 Ill. App. 3d 81, 599 N.E.2d 1305 (1992).  On review of a sufficiency of the evidence claim, the critical inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985).

In this case, we hold that discrepancies between Rogers' statements at the scene of the offense and his testimony at trial concerning his acquaintance with the perpetrators did not render Rogers' testimony unworthy of belief.  Rogers consistently stated that defendant, whom he recognized only as "Nod," was the first person to enter Woods' house with a gun in hand.  The other person, whom Rogers recognized as "Snake," was the one who shot him nine times when "Nod" told "Snake" to "pop" Rogers.  Police investigation revealed that a gun used in the offense and handled by defendant was found in a vehicle which had been observed at the scene and which was later being driven by "Snake."  Viewing all of the evidence in the light most favorable to the prosecution, we thus conclude that Rogers' positive eyewitness identification, together with other circumstantial evidence of defendant's guilt, was sufficient to sustain the jury's verdicts.

3.  Single Subject Rule

We next consider defendant's argument that his conviction of aggravated battery with a firearm must be vacated because Public Act 86--980 violates the single subject clause of the state constitution.  Defendant contends that the various provisions of the Act bear no relation to one another and that the Act represents legislative "logrolling."

The state constitution requires that "[b]ills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject."  Ill. Const. 1970, art. IV, §8(d).  To determine whether an act violates this provision requires a two-part analysis:  first, we ask whether the act on its face involves a legitimate single subject; and second, we ask whether the various provisions within the act all relate to the proper subject at issue.  
People v. Sypien
, 198 Ill. 2d 334, 763 N.E.2d 264 (2001).

So analyzed, the appellate court upheld Public Act 86--980 in 
People v. Vazquez
, 315 Ill. App. 3d 1131, 734 N.E.2d 1023 (2000).

Defendant's position that the various provisions of an act also must be related to one another to withstand single subject analysis was expressly rejected both in 
Vazquez
 and in our supreme court's decision in 
Sypien
.  
We agree with the 
Vazquez
 court's analysis of Public Act 86--980 and its conclusion that the Act withstands single subject scrutiny.  Accordingly, we affirm defendant's conviction for aggravated battery with a firearm.

4.  One Act, One Crime

Last, defendant argues that his two convictions for home invasion violate one-act, one-crime principles.  The one-act, one-crime rule prohibits multiple convictions where more than one offense is carved from a single physical act.  
People v. King
, 66 Ill. 2d 551, 363 N.E.2d 838 (1977).  Where a defendant acts with another, he may be charged as a principal based on his own criminal acts and as an accomplice based on the criminal acts of another.  But, once the defendant's guilt as a principal is established, a separate conviction for the same crime based on accountability will not stand.  
People v. Hicks
, 181 Ill. 2d 541, 693 N.E.2d 373 (1998).  

In this case, the State charged defendant and Graves jointly with two counts of home invasion.  Alleging that defendant and Graves entered Woods' home knowing it was occupied, the indictment charged home invasion in count I based on defendant's use of force on Rogers while armed with a dangerous weapon (720 ILCS 5/12--11(a)(1) (West 1998)) and in count II based on Graves' intentional infliction of injury to Rogers (720 ILCS 5/12--11(a)(2) (West 1998)).  Thus, each defendant was charged as a principal for his own conduct and as an accomplice for the conduct of the other.  The jury found defendant guilty on both charges.

On similar facts, our supreme court ruled that only one conviction for home invasion can stand.  
Hicks
, 181 Ill. 2d 541, 693 N.E.2d 373.  In 
Hicks
, as here, the defendant and a codefendant entered a residence together.  Once inside, Hicks battered one victim, while his codefendant battered another.  As here, the State charged Hicks as a principal for his own conduct and as an accomplice for the conduct of his codefendant.  Hicks was convicted on both charges.  On review, the supreme court rejected the State's position that unlawful entry into the house by two assailants supported the two convictions.  The court held that one-act, one-crime principles required that a defendant in this situation be convicted only for an offense based on his own entry into the home.  
Hicks
, 181 Ill. 2d 541, 693 N.E.2d 373.

In our opinion, 
Hicks
 is dispositive of the parties' arguments in this case.  Pursuant to 
Hicks
, defendant's conviction for home invasion based on accountability for intentionally causing injury to Rogers must be vacated.  Because the record before us indicates that the trial court may have considered both home invasion convictions when sentencing defendant to a 25-year term of imprisonment, the cause must be remanded for resentencing.  
People v. Smith
,  275 Ill. App. 3d 207, 655 N.E.2d 1129 (1995).

CONCLUSION

For the reasons stated, we affirm defendant's conviction for aggravated battery with a firearm and one conviction for home invasion (count I).  We vacate his other conviction for home invasion (count II), and we remand the cause for resentencing.

Affirmed in part; vacated in part; remanded in part.

LYTTON, P.J., and McDADE, J., concurred.